CORNELIA M. STEWART, Appellant, *v.* THE LONG ISLAND RAILROAD COMPANY, Respondent.

S. and the F., N. S. & C. R. R. Co. entered into a contract by which S. leased a railroad owned by him to the company for a term of fifty years at an annual rental of a specified percentage upon the agreed cost of the road. The contract contained the ordinary covenant for the surrender of the demised premises at the end of the term, subject, however, to certain other provisions, in substance as follows : The lessee covenanted at the end of the term to pay to the lessor the principal sum expended by him upon the road; rent to continue until such payment, and then to cease. Upon such payment being made it was stipulated that the company should be vested with the fee of the road and appurtenances, and that the contract should thereupon be deemed a sufficient grant. The contract contained the usual provisions for re-entry for non-payment of rent or breach of other covenants by the lessee. The said company assigned the contract to another railroad corporation, which leased to the defendant all the property covered by the contract for the term of ninety-nine years, at a different rent from that reserved in the original lease, and with a provision for re-entry and a covenant to surrender at the end of the term. In an action by the devisee of S. to recover rent, *held* (FINCH, J., dissenting), that the lease to defendant operated, as between it and S. or his devisee, as an assignment of the entire term fixed by the original contract, and thus established a privity of estate between S. and defendant which rendered the latter liable; that the agreement to transfer the fee did not merge the fifty years term or prevent the relation of landlord and tenant subsisting during its continuance; as by the terms of said agreement the payment of the purchase-price at the end of that term is made a condition precedent to the vesting of the fee in the lessee, and so the contract was not a present sale of the fee, but simply for a sale to take place *in futuro*.

*Post* v. *Kearney* (2 N. Y. 394), *Collins* v. *Hasbrouck* (56 id. 157), dis-

tinguished, as are also the cases holding where a lessee subleases for the whole of the term but the sub-lessee covenants to surrender to him at the end of the term, that the sub-lease does not operate as an assignment.

Where a lessee parts with his whole term or interest as lessee, or makes a lease for a period exceeding his whole term it will, as to the landlord, amount to an assignment of the lease, and its character as such is not destroyed, by the reservation therein of a new rent to the assignor with a power of re-entering for non-payment, or by its assumption of the character of a sub-lease; and the assignee, so long as he continues to hold the estate, is liable directly to the landlord on all covenants in the original lease which run with the land, including the covenant to pay rent.

An estate to arise *in futuro* cannot be tacked on to the estate of a lessee who has assigned his whole term, so as to create a reversion in him and establish the relation of landlord and tenant between him and his assignee, so far as strictly reversionary rights are concerned, or prevent that relation from existing between the assignee and the original landlord.

(Argued February 8, 1886; decided June 15, 1886.)

APPEAL from judgment of the General Term of the Supreme Court, in the second judicial department, entered upon an order made February 12, 1884, which affirmed a judgment in favor of plaintiff, entered upon an order dismissing the complaint on trial.

This action was brought by plaintiff, as devisee of Alexander T. Stewart, against defendant, whom plaintiff alleged was assignee of a lease made by said Stewart in his life-time, to recover rent due. The material facts are stated in the dissenting opinion.

*Samuel Hand* for appellant. Where a lessee transfers his entire term, the transfer constitutes an assignment between the original lessor and the transferee. (*Childs* v. *Clark*, 3 Barb. Ch. 59; *Van Rensselaer's Ex'rs* v. *Gallup*, 5 Den. 460; *Bagley* v. *Freeman*, 1 Hilt. 196; *Bedford* v. *Terhune*, 30 N. Y. 457; *Davis* v. *Morris*, 36 id. 569, 315; *Woodhull* v. *Rosenthal*, 61 id. 391; *Towle* v. *Remsen*, 70 id. 319; *Eaton* v. *Jacques*, 2 Doug. 469; *Piggott* v. *Mason*, 1 Paige, 412.) In the cases relied on to sustain the judgment the covenant of the under lessees to surrender up the premises

on the last day of the term, required a surrender to the original lessee half a day before the term of such lessee expired. Although the second lessee had the whole of the unoccupied term it was subject to this covenant, and therefore a reversion did exist in the original lessee. (*People, ex rel. Elston*, v. *Robertson*, 39 Barb. 9; *Detroit Sav. Bk.* v. *Bellamy*, 49 Mich. 317; Wood's Landl. and Ten., § 82; 2 Prest. Conv. 124; 1 Sandf. 109; *Post* v. *Kearney*, 2 N. Y. 394; *Collins* v. *Hasbrouck*, 56 id. 157; Archb. on Landl. and Ten. 10; *Doe, ex dem.* v. *Bateman*, 2 Barn. & Adol. 168; *Ganson* v. *Tifft*, 71 N. Y. 48; *Woodhull* v. *Rosenthal*, 61 id. 382.) The instrument of May 3, 1876, taken as a whole, may be regarded as a general assignment of all the property of the Flushing, North Shore and Central Railroad Company, and the Long Island road having entered into possession, has become bound, as the assignee of the lease from Mr. Stewart, owned by the Flushing, North Shore and Central Company. (*Ecker* v. *C., B. & Q. R. R. Co.*, 8 Mo. App. 223; *Boyce* v. *Bakewell*, 37 Mo. 492.) A reversion is essential to a lease, and when a grantor has transferred all his term and estate in the demised premises, the instrument of transfer will operate as an assignment of the lease, and not as an under-lease, notwithstanding the reservation of a rent to the grantor, or a right of re-entry on non-payment, or on the non-performance by the grantee of covenants contained in it, although words of demise be used instead of words of assignment. (*Porter* v. *French*, 9 Irish L. R. 539; *Hicks* v. *Downing*, 1 Ld. Raym. 99; *Palmer* v. *Edwards*, 1 Dougl. 187 *n;* *Smith* v. *Mapleback*, 1 Term R. 441; *Parmenter* v. *Webber*, 8 Taunt. 593; *Doe, dem. Freeman*, v. *Bateman*, 2 Barn. & Ald. 168; *Rankin* v. *Newsam*, 1 Huds. & Br. 70; *Pluck* v. *Digges*, 2 id. 1; *Fawcett* v. *Hall*, Alcock & Napier, 248; *Thorne* v. *Woolcomb*, 3 Barn. & Adol. 586; *Wollaston* v. *Hakewell*, 3 Scott's N. R. 593, 616; *Fitzgerald* v. *O'Connell*, 1 Jo. & La You, Jr., chap. 134, 156; *Beaumont* v. *Marquis of Salisbury*, 19 Beav. 198; *Langford* v. *Selmes*, 3 Kay & Johns. 220; *Beardman* v. *Wilson*, 4 C. P. 57; 1 Wash. [4th ed.] 515.) Whatever may be the terms used in the in-

strument, provided they are sufficient to convey the entire estate or term of the grantor, it operates to make the transferee the assignee of the original lease, without regard to the intention of the parties that it should create the relation of landlord and tenant between assignor and assignee. (*Porter* v. *French*, 9 Irish L. R. 514, 523, 527, 540, 542–3; *Smiley* v. *Van Winkle*, 6 Cal. 605.) The agreement for the purchase of the demised premises contained in the Stewart lease does not alter the legal effect of the instrument as an assignment between the original lessor and the Long Island Railroad Company. (*Langford* v. *Selmes*, 3 Kay & J. 220.) It is one of the essentials of a lease that it should contain a reversion in favor of the party from whom the grant or assurance proceeds. (*Smiley* v. *Van Winkle*, 6 Cal. 605; *Adams* v. *Beach*, 1 Phil. 99; 1 Beav. 112; *Indianapolis, etc., Co.* v. *Cleveland, etc., R. R. Co.*, 45 Ind. 281; *Lee* v. *Payn*, 4 Mich. 106; *Lloyd* v. *Cozzens*, 2 Ashm. 138.) If a deed passes all the estate, or time of the termor, it is an assignment; but if it be for a less time than the whole term, it is an under-lease, and leaves reversion in the termor. (4 Kent's Com. 96 and *n.* 1 [12th ed.]; Bacon's Abr., Lease, 1, 3 [Bouv. ed.]; Woodfall's Landl. & Ten. [11th ed.] 235, 241; Williams on Real Prop. [5th ed.] 405; 1 Platt on Leases, 19, 101-2; 1 Wash. on Real Prop. [4th ed.] 510–16; Digby's Hist. L. Real Prop. 510–16; Wood's Landl. and Ten. 93, *n.* 2.) The same instrument may be an assignment between the original lessor and the transferee, and a sub-lease between the parties to it. (1 Wash. [4th ed.] 515 *n.* 6; Taylor's Landl. and Ten. [7th ed.], § 109; Wood's Landl. and Ten. [Banks' ed.], § 347; *Adams* v. *Beach*, 1 Phil. 178; 1 Stra. 405; 1 Vent. 242, 272; 2 Lev. 80; Carth. 161; 1 Ves. & B. 8; 8 Taunt. 593; 5 Bing. 17; 5 Barn., etc., 589; 1 Story's Eq., § 687; 1 Beav. 112; *Linden* v. *Hepburn*, 5 How. Pr. 188; *Doe, dem. Freeman,* v. *Bateman*, 2 Barn. & Ald. 168; *Lessee Porter* v. *French*, 9 Irish L. R. 514, 525, 526, 527, 540, 544; *Preece* v. *Corrie*, 5 Bing. 27; 2 Platt on Leases, 351.) The covenant to surrender at the end of the term cannot itself create a reversion. (*Blumenberg* v. *Mayers*, 32 Cal. 95; *Schilling* v. *Holmes*, 23 id. 230.)

*E. B. Hinsdale* for respondent.   It is essential to the assignment of a lease by operation of law that the whole interest of the original lessee should be transferred.  (*Davis* v. *Morris*, 36 N. Y. 569; *Van Rensselaer's Ex'rs* v. *Gallup*, 5 Den. 454; *Piggott* v. *Mason*, 1 Paige, 412; *Kearney* v. *Post*, 1 Sandf. 105; *S. C.*, 2 N. Y. 394; *People* v. *Robertson*, 39 Barb. 9.)   Under the agreement of purchase, the Central Railroad Company of Long Island and its successor, by consolidation, the Flushing, North Shore and Central Railroad Company, were equitable owners.   Their interest was real estate, which, in case of an individual, would descend to heirs. (*Champion* v. *Brown*, 6 Johns. Ch. 398; *Hathaway* v. *Payne*, 34 N. Y. 92.)   The court must construe all parts of the contract together, and find out the intention of the parties from the whole instrument, giving every part full effect.  (*Van Rensselaer* v. *Dennison*, 35 N. Y. 395, 400; Finland's Landl. and Ten. 294; *Van Rensselaer* v. *Gallup*, 5 Den. 454; *Piggott* v. *Mason*, 1 Paige, 412; *Kearney* v. *Post*, 1 Sandf. 105.) Even if the whole term under the Stewart contract had been vested in this defendant under the lease to it, the latter would still create an under-tenancy and not an assignment. (*Piggott* v. *Mason*, 1 Paige, 412; *Kearney* v. *Post*, 1 Sandf. 105; *S. C.*, 2 N. Y. 394; *Martin* v. *O'Connor*, 43 Barb. 514; *Collins* v. *Hasbrouck*, 56 N. Y. 157; *Ganson* v. *Tifft*, 71 id. 48; *Collamore* v. *Kelly*, 12 Iowa, 319; *People* v. *Short*, 14 Hun, 112; *Linden* v. *Hepburn*, 5 How. Pr. 188; *Woodhull* v. *Rosenthal*, 61 N. Y. 383, 391; *Bedford* v. *Terhune*, 30 id. 453.)

RAPALLO, J.   The only question in this case is whether the defendant, by entering into the contract of May, 1876, with the Flushing, North Shore and Central Railroad Company, came into such a relation with the original lessor of the railroad in question, represented by the plaintiff, as to subject it to liability directly to her for the rent reserved by the original lease of January, 1873, from her devisor, Alexander T. Stewart, to the Central Railroad Company of Long Island.   The facts

are so fully stated in the opinion of my learned brother, Finch, J., that it is not necessary to repeat them in detail.

That the contract of A. T. Stewart with the Central Railroad Company of Long Island, dated January, .1873, was a lease of the road for the term of fifty years, cannot, I think, be disputed, and thus far in the discussions in this court it has been conceded. The annual rent reserved was a percentage upon the agreed cost of the road, liable to be augmented by a percentage upon such further expenditures as might be made by the landlord during the term. If this had been all of the contract there would have been no difference of opinion between us; but it contained further provisions which have given rise to the present discussion.

The ordinary covenant to surrender the demised premises on the last day of the term was made subject to the further provisions of the contract, which were that the lessee covenanted at the expiration of the said term of fifty years from January 7, 1873, to pay to the lessor the principal sum by him expended on the road, and that upon such payment, *but not before,* the payment of rent should thereafter cease, such rent, however, to be paid up to such time, and that *upon such payment of such principal sum* the lessee, its successors or assigns, should not surrender the said demised premises, but should be vested with the fee-simple of the right of way and all the property appurtenant thereto, owned by the lessor, and that the contract should thereupon, *and upon such payment,* be deemed a sufficient grant or deed of conveyance, and that the lessor should then execute such further deed as might be necessary, etc.

Until the payment of the principal sum, however, the rent was to continue, and the lease contained the usual provisions for re-entry for non-payment of rent or the breach of the other covenants in the instrument, which were numerous.

In June, 1874, the entire interest of the Central Company, under this lease and contract, became vested in the Flushing, North Shore and Central Railroad Company, to whom the contract was assigned, and in May, 1876, the latter company entered into the agreement with the defendant which is set forth

in the opinion of FINCH, J., and the effect of which is now in question. The main feature of that agreement, to which it is necessary for the purposes of this discussion to refer, is that the last-named company leased to the defendant the whole of the property which was demised by Stewart to the Central Railroad Company, and for a term longer than that of the original lease, viz. : for the term of ninety-nine years. It thus transferred to the defendant the entire term during which the Central Railroad Company was to hold the demised premises as lessee of Alexander T. Stewart, and left no particle of that term in the original lessee or in its first assignee, the Flushing, North Shore and Central Railroad Company, and the question now before us is, whether it operated, as between the original lessor, Stewart, or his devisee, and the defendant, as an assignment of that entire term, and thus established a privity of estate between them which rendered the defendant liable to the original lessor, or whether it was, as between those parties, a mere sub-lease under which the defendant was liable only to its immediate lessor.

The rules relating to the effect of an assignment of a lease are so well settled that it is hardly necessary to do more than refer to them. Where a lessee assigns his whole estate, without reserving any reversion therein in himself, a privity of estate is at once created between his assignee and the original lessor, and the latter has a right of action directly against the assignee, on the covenant to pay rent, or any other covenant in the lease which runs with the land; but if the lessee sublets the premises, reserving or retaining any such reversion, however small, the privity of the estate is not established and the original landlord has no right of action against the sub-lessee, there being neither privity of contract nor of estate between them. Where a lessee of land leases the same land to a third party, the question has often arisen whether the second lease is in legal effect an assignment of the original lease, or a mere sub-lease. The question has frequently, and probably most generally, arisen between the lessee and his transferee, and much confusion will be avoided by observing the distinction

between those cases, and cases where the question has been between the transferee and the original landlord. In the latter class of cases the rule is well settled that if the lessee parts with his whole term or interest as lessee, or makes a lease for a period exceeding his whole term, it will, as to the landlord, amount to an assignment of the lease, and the essence of the instrument as an assignment, so far as the original lessor is concerned, will not be destroyed by its reserving a new rent to the assignor with a power of re-entering for non-payment, nor. by its assuming, by the use of the word *demise* or otherwise, the character of a sub-lease; and the assignee, so long as he continues to hold the estate, is liable directly to the original lessor on all covenants in the original lease which run with the land, including the covenant to pay rent. (Taylor's Landl. & Ten. [7th ed.] 109; *Hicks* v. *Downing*, 1 Lord Raym. 99; *Palmer* v. *Edwards*, 1 Doug. 187; *Smith* v. *Mapleback*, 1 T. R. 441; *Porter* v. *French*, 9 Irish Law R. 514; *Parmenter* v. *Weber*, 8 Taunt. 593; *Doe* v. *Bateman*, 2 Barn. & Ald. 168; *Wallaston* v. *Hakewell*, 3 Scott N. R. 616; *Pluck* v. *Digges*, 5 Bligh [N. S.], 31; *Beaumont* v. *Marquis of Salisbury*, 19 Beav. 198; *Thorne* v. *Woolcombe*, 3 Barn. & Ald. 586.)

But as between the *original lessee* and *his lessee* or transferee, even though the original lessee demises his whole term, if the parties intend a lease, the relation of landlord and tenant, as to all but strict reversionary rights, will arise between them.

The effect, therefore, of a demise by a lessee for a period equal to or exceeding his whole term is to divest him of any reversionary right and render his lessee liable, as assignee, to the original lessor, but at the same time the relation of landlord and tenant is created between the parties to the second demise, if they so intended. (Taylor's Landl. & Ten. [7th ed.] 109, note s. 16 *n.* 5; 1 Washb. Real Estate, 515 [4th ed.], n. 6; *Adams* v. *Beach*, 1 Phil. 99, 178; *Indianapolis, etc., R. R. Co.* v. *Cleveland, etc., R. R. Co.*, 45 Ind. 281; *Lee* v. *Payn*, 4 Mich. 106; *Lloyd* v. *Cosens*, 2 Ashm. 138; Wood's Landl. and Ten. [Banks' ed.], § 347.) These rules are fully recognized in

this State. (*Prescott* v. *De Forest*, 16 Johns. 159; *Bedford* v. *Terhune*, 30 N. Y. 453, 457; *Davis* v. *Morris*, 36 id. 569; *Woodhull* v. *Rosenthal*, 61 id. 382, 391, 392.)

There can be no doubt that in the present case the original lessee of Stewart parted with its whole term of fifty years and that the defendant acquired it. The Central Railroad Company assigned the entire contract, embracing the term of fifty years as well as the right of purchase of the fee at the end of the fifty years, to the Flushing, North Shore and Central Railroad Company, and I do not understand it to be denied by any one that that company became liable to Stewart directly on the covenants in the lease as assignee of the entire interest of the lessee. But the Flushing, North Shore and Central Railroad Company, by its contract with the defendant, did not assign to the latter the right of purchase at the end of the term of fifty years. It, however, leased the road to the defendant for the term of ninety-nine years, and the defendant covenanted to surrender the demised premises to its immediate lessor at the end of the ninety-nine years. That term, however, being greater than the term of fifty years granted in the original lease, the instrument operated as an assignment of that term, and left no reversion therein in the Flushing, North Shore and Central Railroad Company, consequently during the continuance of the term of fifty years there was a perfect privity of estate between the defendant and the original lessor, and the legal estate in reversion was in the original lessor during the fifty years, and he, or those succeeding to his estate, were both legally and equitably entitled to the rents and had a right of action therefor directly against the defendant by reason of this privity of estate.

It is contended that the Flushing, North Shore and Central Railroad Company, as the assignee of the Central Railroad Company had more than the term of fifty years, granted in the original lease, because it was also assignee of the contract of Stewart by which, in case, at the end of the term, the Central Railroad Company should have performed the covenants in the lease and should then pay to Stewart the principal sum expended by him in the construction of the road, the contract should oper-

ate as a conveyance in fee of the demised premises. That under this contract the Flushing, North Shore and Central Railroad Company was the equitable owner of the fee as well as of the term, and was in possession under both titles when it leased to the defendant; that the lease to the defendant being for only ninety-nine years did not transfer its entire interest in the premises, but left in it a reversion at the expiration of that term, at which time the defendant covenanted to surren-. der to it, and consequently its lease to the defendant was not an assignment but a sub-lease. That argument would be very forcible if the question arose between the defendant and the Flushing, North Shore and Central Railroad Company, and were whether the relation of landlord and tenant subsisted between them. But it has no application to the question upon which this case turns. The equitable estate in reversion claimed to be in the Flushing, North Shore and Central Railroad Company as purchaser, is not a reversion in the term of fifty years. The whole of that term has been transferred to the defendant, not a particle of it is retained by its immediate lessor, and there is absolutely nothing intervening between the estate of the defendant, as assignee of the lessee for the fifty years, and the legal estate in reversion of the original lessor or his devisee; and the right to the rents follows that legal estate in reversion. The owners of the equitable estate claimed, have no right, legal or equitable, to the rents. During the term of fifty years the original lessor or his devisee are entitled to them, and the whole term of fifty years being vested in the defendant it is directly liable to the holder of the legal estate in reversion, there being a privity of estate between them. If a present equitable right to the rents were vested in the same parties in whom the equitable estate in reversion is alleged to be vested, different questions might arise. The fact that the lease to the defendant reserves a different rent from that reserved in the original lease, with a clause for re-entry, cannot affect the question as between the parties to the present controversy, of its operating in law as an assignment of the term.

These points were expressly adjudicated in the cases of *Doe*

v. *Bateman* (2 Barn. & Adol. 168), *Wollaston* v. *Hakewell* (3 Scott's N. R. 616). Neither can the covenant to surrender have any bearing. It was a covenant to surrender at the expiration of the ninety-nine years lease, long after the expiration of the fifty years lease. Where in an assignment of a lease or in a demise by the lessee for the same term as that granted by the original lease, there is a covenant to surrender to the assignor, this has in some cases been held to prevent the sub-lease from operating as an assignment; but this has been because the whole instrument, taken together, has been held to reserve to the original lessee some fragment of the original term, though almost inappreciable in point of duration, as in the case of *Post* v. *Kearney* (2 N. Y. 394), where the assignee of a lease demised the premises for the residue of his term, reserving the right to a delivery of possession by his assignee to him *on the last day* of the term, and a right to intermediate possession in case the buildings should be destroyed by fire. These reservations were held sufficient to characterize the demise as a sub-lease and not an assignment. The right to possession on the last day would leave a fragment of that day of the term in the assignor and was sufficient to create a technical reversion and thus prevent a privity of estate between his lessee and the original lessor.

In *Collins* v. *Hasbrouck* (56 N. Y. 157), the sub-lease was of part of the demised premises and was for only two years and seven months out of a term of ten years and expired four years before the original lease, but the sub-lessee had the privilege of four years more, provided he gave two months notice. The action was ejectment brought by the original lessor against an assignee of the second lessee, claiming that the original lease had been forfeited by the breach of a covenant, on the part of the lessee, which it contained, that he would not sub-let or re-let the demised premises or any part thereof without written consent, etc., under penalty of forfeiture of the term, and the sub-lease before referred to was claimed to be a breach of that covenant. The judgment below was for the landlord but it was reversed in this court on the ground that the alleged for-

feiture had been waived by the landlord.   In the opinion, the question is discussed whether the sub-lease amounted to an assignment of the term of the original lease, or a mere sub-letting or re-letting of part of the demised premises.   This question, in view of the result reached on the question of waiver, ceased to be controlling, but in discussing it the learned judge delivering the opinion made some remarks touching the effect of reserving a new rent in the sub-lease, and of reserving to the original lessee a right of re-entry for a breach of condition by his lessee, which have given rise to some confusion.   The features of the instrument, which are above referred to, would be proper subjects of consideration for the purpose of determining whether the relation of landlord and tenant was created as between the original lessee and his lessee, and bore upon the question then before the court, viz. : Whether the second lease was a sub-letting or re-letting of part of the demised premises, which constituted a breach of the covenant not to sub-let or re-let.   But the question of privity of estate between the original lessor and the lessee of his lessee was not in the case.   The determination of that question depends upon whether the whole of the term of the original lessee became vested in his lessee, and the circumstances that the second lease reserves a different rent or a right to re-entry for breach of condition are immaterial.   (*Doe* v. *Bateman,* 2 Barn. & Adol. 168; *Wollaston* v. *Hakewell,* 3 Scott's N. R. 616; *Prescott* v. *De Forest,* 16 Johns. 159; Bacon's Abr., Leases, 1, 3; *Palmer* v. *Edwards,* 1 Doug. 187; *Smith* v. *Mapleback,* 1 Term R. 441; *Smiley* v. *Van Winkle,* 6 Cal. 605; *Loyd* v. *Cozens,* 2 Ashm. 138; 2 Preston Con. 124; Taylor's Landl. and Ten. (7th ed.), § 109; 1 Washb. Real Prop. 515, § 6.) The cases which hold that where a lessee sub-leases the demised premises for the whole of his term, but his lessee covenants to surrender to him at the end of the term, the sub-lease does not operate as an assignment, proceed upon the theory that by reason of this covenant to surrender, some fragment of the term remains in the original lessor.   In most of the cases, and in the earlier cases in which this doctrine was broached, the

language of the covenant was that the sub-lessee would surrender the demised premises *on the last day* of the term.

In *Piggot* v. *Mason* (1 Paige, 412), by the original lease the lessee had thirty days after the expiration of the lease to remove buildings from the demised premises. His assignee sub-leased for the residue of the term, and his lessee covenanted to surrender possession " on the last day of the term."

In *Post* v. *Kearney* (2 N. Y. 394), the covenant of the sub-lessee was that " on the last day of his term he would surrender the possession of the demised premises to his lessor " (p. 395).

Some fragment of that last day was, therefore, reserved to the original lessee, for he was entitled to the surrender during some portion of the last day.. This was held sufficient to establish a technical reversion in the original lessee and thus prevent a privity of estate from arising between his lessee and the original landlord. The same theory has been subsequently adopted in cases where the language of the covenant has been that the second lessee would surrender to his lessor at the expiration of the term of the sub-lease, without adverting to any distinction.

In *Ganson* v. *Tifft* (71 N. Y. 48, 54), the sub-lease provided that at the expiration of the term, or other sooner determination of the demise, the lessee should surrender the demised premises to the lessor, and the court say : " This constitutes a sub-lease of the premises, and not an assignment of the *entire term*."

It is obvious that the covenant to surrender cannot, in the present case, have the effect which was given to it in the cases cited, for it was to surrender at the expiration of a term of ninety-nine years, the original lease being for only fifty years, and there is no theory upon which it can be pretended that any vestige of that term or of any reversion therein remains in the lessor of the defendant.

The agreement to transfer the fee to the lessee did not merge the term of fifty years, nor prevent the relation of landlord and tenant subsisting between the original lessee or its transferee of the term, during its continuance. The lessee was to become entitled to the fee only in case it performed the covenants and

paid the principal of the cost of the road, and the lease provides in terms that on such payment being made, *but not before*, the rent reserved in the lease shall cease. The payment of this principal sum at the end of the fifty years, as well as of the other sums reserved, was by the very terms of the contract made a condition precedent to the vesting of the fee in the lessee. In this respect the case does not differ in substance from *Bostwick* v. *Frankfield* (74 N. Y. 207), where a similar covenant to convey a fee to the lessee was held not to create an equitable estate in fee in the lessee, in which his estate as lessee merged, but that the lease remained in full force, and the relation of landlord and tenant continued, until performance of the contract of purchase, and the landlord was entitled to dispossess the lessee by summary proceedings against him as tenant. In that case it was held that the doctrine which treats an individual, who has contracted for the purchase of land as the owner, could not be applied when the intention of the parties was clearly adverse to such a presumption, and that a provision in the contract that unless carried out at the time named, it should become void, negatived such an intention. Here the provision is that the lessee shall hold as tenant for the term of fifty years, paying rent, and that at the end of the fifty years the lessee shall pay to the lessor the principal sum by him expended upon the road, and that upon such payment "*but not before*" the rent should cease, such rent, however, to be paid up to such time, and *upon such payment* of the said principal sum the lessee to be vested with the title; the right to re-enter for non-payment of rent or breach of covenants being fully reserved.

These provisions plainly manifest an intention that no title, except an estate for years, shall vest in the lessee until the end of the term and the payment of the principal and all rent in arrears, and that in the meantime the fee and the reversion shall remain in the lessor. Until the expiration of the term the only estate which vested in the lessee was an estate for years, which was entirely separable from the right to acquire the fee. The lessee could assign the term and retain the con-

tract for the purchase of the fee, and by such an assignment the assignee would be brought into privity with the original landlord who would be entitled to his action directly against the assignee of the term so long as it continued such assignee. It could divest itself of this liability at any time before rent had accrued by assigning over the term, but so long as it continued to hold the term it held as tenant of the original landlord, and was subject to be proceeded against as such. The original lessee, or the lessor of the defendant, as has been shown, retained no portion of the term and consequently no reversion. Whatever equitable rights it may have had were to arise *in futuro.* An estate to arise *in futuro* cannot be tacked on to the estate of a lessee who has assigned his whole term, so as to create a reversion in him and establish the relation of landlord and tenant between him and the person to whom he has assigned his term, so far as strictly reversionary rights are concerned, or prevent that relation from existing between such person and the original landlord.

In *Prescott* v. *DeForest* (16 Johns. 159), Stewart leased a house to Satterlee for one year from the 1st of May, 1817. Satterlee then leased part of the house to the plaintiff at $1,000 per annum, payable quarterly, for the same term for which he had taken it. On the 1st of February, 1818, Satterlee obtained a new lease of the house from the landlord for one year from the 1st of May, 1818. On the 2d of March, 1818, Stewart distrained the goods of the plaintiff on the premises for rent in arrears and sold them in due form, and the defendant became the purchaser. The right to distrain for rent was incident to and inseparable from the reversion, and it was held that Satterlee had no reversion; that the lease from him to the plaintiff, being for the whole of his own term, must be deemed an assignment and not an under-letting, although it was for only part of the premises, and reserved a new rent, payable to himself; that there was no privity of estate between him and the plaintiff, but privity of contract merely; that although at the time of the distress Satterlee had a second lease from May 1, 1818, to May 1, 1819, that extension of his term did not

operate to vest a reversion in him because it was to commence *in futuro*, and in the meantime the reversion continued in Stewart, the original landlord, who by reason of privity of estate had the right to sue the plaintiff or distrain her goods for the rent due him.   On this ground the distress by Satterlee was held void.   So in the present case, the title of the defendant's lessor, under the Stewart contract, to the fee of the demised premises was not to commence until the end of the term of fifty years, and the payment of the purchase-money, and whatever equitable rights the defendant's lessor may have had under that contract, it is clear that in the meantime the legal estate in reversion continued in Stewart and his devisee, and the right to the rent followed the reversion.   The contract was not a present sale of the fee, under which the equitable title vested in the purchaser and the title to the purchase-money in the vendor, but was for a sale to take place *in futuro*, that is, at the end of the fifty years.   It was expressly stipulated in the Stewart contract that the rent payable to Stewart should cease at the end of the fifty years *and not before*, and that then, on the payment of the stipulated sum, the lessee should become vested with the fee.   This was, in substance, a contract that Stewart's lessee should hold as his tenant under the lease until the expiration of the term, and that the other rights secured by the contract should then commence to operate.   Whether they will then ripen into a title depends upon whether the lessor of the defendant performs the conditions precedent upon which the vesting of the title is conditioned.

In *Langford* v. *Semmes* (3 Kay & Johns. 220), a lessee for a term of ninety-nine years, with the option of purchasing the fee-simple in reversion, granted a lease for a term which exceeded the residue of his own term, and it was held that this lease established a privity of estate between the last lessee and the original lessor.   The case is not precisely in point, because here there was an unconditional contract to pay the cost of the road at the end of the term, and that on such payment the title should vest, but nevertheless the vesting of the title was conditioned on the lapse of the fifty years and on the pay-

ment being made at the end of the term.   This contract, however, did not operate to, enlarge the term of the original lease, it was separable from the estate for years held by the original lessee, and the transfer of the whole of that term to the defendant, while the legal estate in reversion, together with the legal and equitable right to the rents, were in the plaintiff, established a privity of estate between the defendant and the plaintiff which entitled her to maintain this action directly against the defendant on the covenant to pay rent contained in the original lease from Stewart.

The judgment of the General and Special Terms should be reversed and a new trial ordered, with costs to abide the event.

FINCH, J. (dissenting).   The characteristic difference between an assignment of his lease and an under-letting by the original tenant resides in the inquiry whether as a result of the transaction the primary lessee has transferred his whole and entire estate and completely parted with his title, or has retained in himself some fragment or shred of his estate, either substantial or even formal and technical.   An under-letting implies a constituted relation of landlord and tenant between the parties contracting ; and that, in turn, the existence in the landlord of an estate superior to the leasehold and out of which the latter is carved ; for there can be no tenure held of one whose title is utterly destroyed.   This rule prevails even over the apparent intention, not because that intention ceases to be the test and standard of interpretation, but because an impossible intention is never presumed in preference to one possible and operative between the parties.   The rule in its origin under the feudal system had a substantial and beneficial force.   To the superior lord a service of fealty was due from the tenant in virtue of his tenure, and if the lessee could part with his whole estate to one holding only under him, the service of fealty was gone, and so, in that case, the new tenant was deemed to hold under the paramount title as an assignee of the lease, put in the place and room of the original tenant, and bound by his covenants to render his service.   Of course, that useful result has gone

out of the doctrine, and it remains with us simply a rule of legal logic, much less deserving the power to override and pervert the discovered intention of the parties.   As a consequence, a plain tendency to enforce that intention, even upon very narrow and technical grounds, has been developed.   Originally, a reversion in the primary lessee of some fragment of his estate was needful to support a sub-lease.   It was said that it might be for a day, an hour, or even a minute, but must nevertheless be, and leave in the primary lessee a reversion having a tangible existence.   But that reversion now may be purely technical, and the product of reasoning rather than of substantial fact. It has been held that where the original tenant transferred for the identical term of his own lease, but the transferee covenanted to surrender to him, a reversion was implied from that fact, although no man can measure it as a tangible thing, since both surrenders, that of the sub-tenant to the primary lessee, and that of the latter to the original landlord, are due under the contracts at the same precise moment of time.   (*Collins* v. *Hasbrouck*, 56 N. Y. 157; *Ganson* v. *Tifft*, 71 id. 48.)

Indeed, the cases cited seem to go further than that, and to hold that the reservation of a right of re-entry for breach of condition, and even the reservation of a new rent, makes the instrument a sub-lease.   The case cited as to the effect of a re-entry (*Doe, ex dem.* v. *Bateman*, 2 Barn. & Ald. 168), so far from holding that a reserved right of re-entry necessarily implies a reversion, appears to me to hold the exact contrary, and to determine that such right may, and often does, exist by pure force of the contract and without the shadow of a reversion in the land.   It is not necessary, however, to say whether the cases in our own State are in every respect soundly reasoned. It is quite obvious that they mean this at least; that the contract of the parties, construed according to their plain intention as expressed by it, shall prevail where upon such construction that contract is a possible one and can be rendered effective in subordination to established legal rules; and that where a sub-lease is manifestly intended, the court will search diligently and even closely for some trace of a reversion to support it.

And this result of the cases in our own court is fully sustained in the case of *Henry John Porter* v. *French* (9 Irish L. R. 514), in which the English cases were carefully reviewed, and it was held among other things: " It has been argued and found that the court in construing this instrument should have special regard to its form ; I mean to the circumstance that it is in the ordinary form of a lease, and that we are bound to give effect to the manifest intention of the parties themselves; a principle which I fully admit, subject, however, to the consideration that there are certain known rules and principles of law which it is not competent to individuals to set aside or overturn at their pleasure." So that we may proceed on the assured basis that what was intended as a lease must be construed as a lease unless some inexorable legal necessity prevents.

We are now to consider the application of this doctrine to the facts developed in the case at bar. The contract of Stewart with the Central Railroad Company of Long Island was made in January of 1873. That contract begins with a recital that Stewart has built a first-class railroad from his Hempstead Plains purchase to Farmingdale at a cost which has been adjusted between the parties at the sum of $393,000, upon lands partly owned by him and partly obtained by the Central Company under the statute, but which last were paid for by Stewart; and that it is intended by the party of the first part to lease the constructed line to the party of the second part. The contract then " in consideration of the rents, covenants and agreements " thereinafter mentioned proceeds to " grant, demise and to farm-let " the property, describing it, together with " the railroad track, side tracks, depots, water tanks, gravel banks and all buildings thereon and appurtenances thereto belonging " for the term of fifty years, the railroad company paying therefor annually, for the first three years, " the yearly rent *or sum* " of seven per cent upon the agreed cost, and for the remaining forty-seven years ten per cent upon such cost. The contract further provides that if Stewart should expend further sums in the completion or equipment of the line, or for a double track, this expense should be added to the principal

sum upon which the rental percentage was to be computed; that the lessee should pay all taxes, assessments and charges upon the property; that such company should run daily trains for passengers and freight, and that for a violation of this covenant, or of that to pay rent, Stewart should be at liberty to re-enter; and that on the last day of the term the lessee would surrender the property to the lessor " subject, however, as here-inafter provided." That limitation upon the duty of surrender appears in a following agreement of purchase and sale, by which the railroad company covenants at the end of the fifty years to pay to Stewart the principal sum by him expended, upon which the rental percentage has been computed, upon which payment the lessee shall not surrender, but shall be vested with the fee and the contract be deemed a sufficient deed of conveyance. An additional contract between the parties specified what work was to be done upon tracks connecting with Garden City under an agreement with Poppenhusen, of which the railroad company had become owner, and added that expenditure to the principal drawing the rental percentage, and provided for an accounting to adjust the amount of such principal. In June, 1874, the Central Company consolidated with the Flushing, North Shore and Central Railroad Company, and to it the Stewart contract was assigned. In May, 1876, that company made a contract with the defendant, the legal effect of which is here in question. By that instrument the Flushing Company leased to the Long Island Company the whole of its railroad from Long Island City to Babylon, including all its rolling stock, tools and machinery and all its branch lines, among which were those constructed by Stewart, for a term of ninety-nine years and a gross rent beginning with over $200,000, and increasing year by year for six years until a final rental of $351,000, became permanently fixed. This rental agreement provided for the protection of the lessee that it might withhold the stipulated payments of rent to the amount of the Flushing Company's interest upon its bonded debt and of its incumbering rents, and apply its payments upon them as so much cash paid to the lessor, but such interest and rents were not to ex-

ceed the yearly maximum agreed upon.     Further provisions
determined the order of application of the lessee's gross earn-
ings; for subrogation to the rights of the bondholders if it
should pay the lessor's bonds; for a re-entry upon breach of
covenants; and a surrender to the lessor at the end of the
term.    The question now comes, whether this instrument rela-
tively to the Stewart lines, was a lease or an assignment of the
Stewart contract, so far as that was itself a lease.

Of that contract two views may be taken. It may be treated
as one complete agreement, establishing relations in accordance
with all its terms as they act and react upon each other, or as
two separate and independent agreements, having no necessary
connection save that they happen to be written on one and the
same paper.     The last is the appellant's contention.    Her
counsel divide the contract into its component parts, and argue
that it consists, first, of a lease for fifty years, and then of a
contract for the sale and purchase of the railroad ; and that the
two agreements are so free from any dependence upon each
other that they might just as well have been contained in sepa-
rate instruments.     Let us suppose that they had been.     The
supposition at once disturbs the theory of relative independ-
ence, since we discover that to make two instruments we are
required to change the covenant to surrender in the lease,
"subject, however, as hereinafter provided," to one "subject
to the provisions of an agreement of purchase and sale made
concurrently herewith;" and are further compelled to add to
the terms of the sale contract, which is conditioned for a con-
veyance upon the prior payment of the rent reserved, a clause
referring to the lease as a means of identifying the amount
and times of payment of the rent intended.    The integrity of
the surrender covenant in the lease contract can only be pre-
served by a reference to the sale contract; and the integrity of
the sale agreement can only be saved by a reference to the
lease to determine the rent payable as a condition, and we
should be required to read the two instruments, thus mutually
referring to each other, made at the same time, and relating to
the same property, together and as if they were one, the in-

quiry being what agreed relations subsisted. So that the question would recur whether the two instruments established two separate and distinct relations, or one single relation as the joint product of the two agreements. We may solve that problem by aid of the inquiry whether at one and the same time the two separate relations could co-exist without affecting or modifying each other. Under what is called the lease, the Central Railroad Company was a tenant for years, having merely a leasehold estate, the main and vital characteristic of which was a surrender of possession to Stewart at the close of the term. Under the contract of purchase, the railroad company was the equitable owner in fee, and not bound to surrender possession at all, and in terms relieved from that duty. This assertion involves the character of the possession taken by the original vendee and lessee, which, in one view of the case, is the pivotal and determining inquiry. The complaint alleges that the Central Company went in under what is denominated the "indenture of lease and supplementary agreement." The meaning of that phrase, as used in the pleading, is shown by a later averment, where it is said that the Flushing Company assigned "said indenture of lease and supplementary agreement to this defendant, a copy of which instrument is hereto annexed, marked A." And the assignment of the whole contract which was made by the Central Company to the Flushing Company upon the consolidation is described as "the said indenture of lease and supplementary agreement." So that the allegation is not that the Central Company went in under the lease as a part or fragment of the contract, or under one of its branches, but under the contract as a whole. The answer discloses that understanding of the complaint, and admits the allegation thus: "That under and pursuant to said instruments," the Central Company went into possession. The parties thus agreeing upon the fact of possession under the contract, no proof was given or offered to the contrary, or to establish an intention to give or take possession under one branch of it alone. We are bound, therefore, to assume that the Central Company was in

possession under the contract as a whole, and both as lessee and vendee — a result not only compelled by the pleadings, but indicated by a marked characteristic of the contract that under both of its branches there was to be one continuous and unchanging possession. It was not stipulated that the Central Company should hold possession as tenant for fifty years, and then surrender that possession to the landlord and take a new one as vendee, but that at the end of the term it should not surrender at all the possession already taken. That the Central Company was in both as lessee and vendee is further unmistakably indicated by a provision of the supplementary agreement which modifies the annual payments to be made. The language used is : " The lease bearing even date herewith is modified, and its conditions temporarily made to conform to this instrument, so that no rent *or interest* shall begin to accrue to the party of the first part until July 1, 1873, and the first quarter's rent *or interest* shall be and become payable three months" thereafter. The dual character of the payments to be made is thus clearly recognized ; they are rent and they are also interest ; and are one or the other interchangeably by reason of the dual character of the possession ; for if the Central Company was in only as tenant, it was nonsense to speak of its rents as synonymous with interest. And beyond the admission of the pleadings, and the obvious intent of the parties indicated by their written stipulations, it is further true that a possession taken generally and not in terms specially limited to some character or right is measured by, and under the protection of, the entire right belonging to the possessor, and cannot be driven out from its shelter and placed under a mere fragment or component part of such right.

The rule goes so far as this. Where one takes a lease for a number of years and during the term enters into a contract of purchase with his landlord of the same property, his possession, which was taken as tenant, operates as notice to one dealing with the landlord in respect to the land, not merely of his right as tenant, but of his right to the inheritance. The possession although taken as tenant becomes also a possession as

purchaser, protecting him as such to the extent of his entire right. (*Daniels* v. *Davison*, 16 Ves. 253.)

So that it becomes manifest that if we suppose the one contract to have been divided into two separate papers, not only would they require to be read together as mutually dependent upon each other, neither alone fixing the rights of the contractors, but possession under each, under one as lessee and under the other as vendee, would stand admitted. That ends all practical result from a supposed separation of the two branches of the one contract, and we may drop the supposition and reason upon the contract as it stands.

The possession of the Central Company as purchaser under the contract gave it at once, upon the execution of that instrument, an equitable estate in fee. (*Champion* v. *Brown*, 6 Johns. Ch. 398; *Hay's Adm'r* v. *Miller*, 6 Hun, 320; affirmed, 70 N. Y. 112; *Pelton* v. *Westchester Fire Ins. Co.*, 77 id. 605.) Had the company been an individual its interest under the contract, springing at once upon its execution, would have been real estate, descendible to his heirs and devisable as such. (*Hathaway* v. *Payne*, 34 N. Y. 92.) In equity the vendor simply holds the legal title as trustee for the vendee. The Central Company, therefore, under the contract, had two estates; one legal and the other equitable; a legal estate as tenant for years and an equitable estate as owner of the fee; the former a chattel real, the latter equivalent to a freehold; and these were concurrent and not consecutive, if we assume that no merger was possible or intended. There is no difficulty in thus treating them. In case of non-payment of the rent, the Central Company would forfeit its right of possession both as lessee and vendee, since that payment is the condition of both estates: it is equally rent and interest, and so described. And as to remedies Stewart might bring ejectment or proceed summarily under the Landlord and Tenant Act, since the Central Company could not deny its tenancy and its landlord's title, or defend its possession as owner under a contract broken and forfeited. If any doubt surrounded the summary remedy, as sufficiently effective, ejectment would give redress. But if

there is difficulty in so treating them, if as concurrent, separate estates they seem inharmonious and inconsistent, it will merely result that the equitable estate of inheritance will draw after it the term. (*Cassel* v. *Girdler*, 9 Ves. 509.) In the case cited the MASTER OF THE ROLLS said : " I thought it had long been established, that, where the same person has the inheritance and the term in himself, though he has in one the equitable interest, and the legal estate in the other, the inheritance draws to itself the term and makes that dependent upon it ;" and after citing several cases he added : " I did not apprehend that it was open to dispute."

The purchaser, therefore, under this contract could have conveyed the fee and put its grantee in possession as owner. It could, as it did, carve out of its fee an estate for ninety-nine years, stretching beyond the term of its lease, and ending with a surrender day and a reversion in fee in itself. Was that lease in any respect void beyond the fifty years, and after having cut the Stewart contract into two instruments must we also sever the defendant's lease into halves, and give him one landlord for the fifty years and another for the forty-nine succeeding ? Is it possible that the immediate lessor, making one complete lease for one entire term, had no remedies of a landlord against a tenant for the first half of the term, but got them new-born at the beginning of the last half ? For that is the inevitable result of the appellant's theory. During the fifty years the Flushing Company, on the basis asserted, could not dispossess the defendant under the Landlord and Tenant Act, for that remedy depends upon the existence of the conventional relation of landlord and tenant between the parties, and where there is not an under-letting there is no such relation, and it is precisely for the reason that no such relation does or *can* exist that the construction of an assignment prevails. How could the Flushing Company make affidavit that such relation existed ? Stewart alone could do that for he becomes the sole landlord. This difficulty is not answered by the cases which hold that even where there is an assignment the assignor may collect an excess of rent beyond what is due

under the original lease, for such actions rest upon the express promise to pay, and not on an extinguished tenancy, and what is recovered is really not rent but purchase-price of the lease sold and assigned. In what character or capacity did the immediate lessor of the defendant make the lease for ninety-nine years? Certainly not in the character or capacity of a lessee of Mrs. Stewart, for as such it had no power to do as it did do, and as such the lease to defendant would neither have been given nor accepted. It is true that a lessee for ten years cannot by a lease for eleven years clothe himself with a reversion and so make his contract a sub-lease, but that is because he has no reversion beyond the ten years, and cannot gain one by his own wrong; but here there is no wrong, since there is an existing reversion in fee upon which the sub-lease is founded. It can stand upon it. Why should it not? It was so meant and intended. Why should we do violence to the intention when no legal necessity compels? The lessee under the Stewart contract and by virtue of its terms was something more than a mere lessee for years during even the first fifty years, for its equitable estate began at the same moment with its legal estate and existed through the whole term of the latter. It did not assign its whole estate to the defendant which it derived from Stewart, and that is conceded. Nobody claims that the equitable fee passed to the defendant. But a transfer is an assignment only when the person transferring parts with the whole estate derived from the original lessor. If that estate be a fee, he must transfer a fee. (*Van Rensselaer* v. *Gallup*, 5 Denio, 454.) The case is not at all like that of *Langford* v. *Selmes* (3 Kay & John. 220), to which we are referred as authority for the proposition that the covenant of sale added to the lease does not prevent a transfer of the leased estate from being an assignment. In the contract in that case there was merely an option to purchase, which could only be exercised at the end of the term. There the lessee had under the contract no estate beyond his term. He had a legal estate, but no equitable one. Whether he would have the latter or not remained uncertain until he exercised his option at the specified time. Meanwhile and dur-

ing the leasehold estate he had only the leasehold estate and no other in the land, and when the learned English Vice Chancellor said " there is no authority for the proposition " he referred to the argument which he states, " that on the *subsequent* acquisition of the fee-simple by the original lessee an estoppel arose by which, on the expiration of the original lease, the *supposed* under-lessee will hold of the under-lessor who had *affected* to demise to him at a rent of six pounds *for a term greater than he was possessed of at the date of the under-lease.*" Here, on the contrary, the under-lessor did not demise for a term " greater than he was possessed of," for it had the fee and carved out of it a lesser estate. The case of *Bostwick* v. *Frankfield* (74 N. Y. 207) presented a similar feature, though in a different form. Two distinct estates, one a leasehold, and the other an equitable fee, were claimed to have been created at different times, but the latter was in substance, though not in form, a mere option, since the effect of non-performance by the vendee was stipulated to make the contract of purchase null and void. It must be remembered that the present is not so much a question of merger resulting from the meeting in one ownership of two distinct estates, but whether two estates were created at all, and if they were, whether the two taken together and constituting the complete right of the lessee and vendee did not leave in it such a reversion as made possible the relation of landlord and tenant between it and its alleged and intended lessee. It is not clear that two estates were created. Substantially it is possible to say there was but one, and that growing out of the contract of purchase and sale. What is called rent may be deemed for the first three years but legal interest upon the agreed cost to Stewart, and for forty-seven years that interest, with three per cent additional, to be added to the cost in making up the full purchase-price. While the agreed percentage is called rent it is substantially interest and in part purchase-money, and is called the " rent or interest." If, however, in view of its language, notwithstanding that but one possession was to be taken under it, and that to be continuous and forever, we must still say that there were two estates, separate but succeeding

each other without break or altered possession; we are obliged to change the beginning of the equitable estate from the date of the contract to the end of the fifty years; a construction which violates the legal effect of the instrument and postpones the equitable estate unduly. If, however, we do that and compelled by seeming difficulties, say that the original lessee had a legal estate for years, and at its close 'an equitable estate in fee, then for the first time upspringing, so that the two estates were in no manner concurrent but strictly successive, I doubt whether even then the rule which makes an intended lease an assignment of a prior one would have any just application. If one has a lease for five years and then afterward takes an additional lease for five years more to commence at the end of the first one, may he not make a valid sub-lease for nine years? Would we hesitate to do as the lessor did, and add the consecutive estates together, in determining whether such a reversion existed as would support the nine-year lease as a whole and during its entire term in accord with the plain purpose of the parties; or would we feel bound to cut the new lease into fragments, and make it give two landlords instead of one, and split it into two leases, especially where the amounts and modes of payment for the term were different and conflicting? And ought we to apply the rule here invoked to any case where a lawful reversion of any kind, legal or equitable, survives the end of the original lease and remains in the primary lessee? The substantial bearing of these inquiries, even if we admit the theory of independent successive estates, which we have sought to show is unsound, is apparent in the present case. The defendant reserved the right to pay its rent by paying the Flushing Company's rents and bond interest. It did not agree to do so, but lest the permission should be misconstrued, it expressly provided that such rents and interest should not exceed its own maximum of rent. If for the first fifty years it is bound to pay all the Flushing Company's rents for leased lines, those sums added to the bonded interest may exceed its maximum rent, and it may be forced to make default on the bonds, and bear a foreclosure, or pay a greater rent than it stipulated, and find its

quarterly payments falling due at times different from its own stipulations. It seems to us, therefore, that the courts below were right in their determination that the defendant's contract was a single, complete lease, and not an assignment of one lease and a creation of another and shorter one. No equity of the plaintiff compels us to a different conclusion. Her rights remain undisturbed precisely as they were originally fixed. Simply she does not acquire a second new and unexpected tenant after having already acquired a first one by operation of law.

It is argued, in view of the difficulties we have suggested, that this lease may be treated as such between the parties to it, and as an assignment relatively to the rights of Stewart. There seems to be some authority for that doctrine, though it is said to be exceptional. (Wood's Landl. and Ten., § 347.) If it be conceded, it goes upon an effort to preserve unbroken the intention and the rights of the parties, and should not apply where it would or might substantially change or affect them. We have seen that such might be the result in the case at bar, by compelling payment of a greater rent than that reserved, through the peril of a default on the mortgage bonds. We do not know how the fact is, but that such a possibility was contemplated is apparent from the provision in the lease intended to protect the defendant in just that emergency. Probably the doctrine referred to goes no further than in case of an assignment to preserve to the assignor some of his contract rights, but does not make him at the same time a landlord and not a landlord.

The final result of the argument may be thus stated : The intention of the parties, plainly disclosed to make a lease, is not to be thwarted except in a case where, for want of a reversion, such a lease under the logic of the law is impossible ; and wherever such a reversion exists sufficient to support a lease, and whether legal or equitable, the intention of the parties can be carried out, and should, therefore, be enforced.

The contrary conclusion plants itself upon a venerable fiction which has outlived its usefulness. A fiction in the law is

never to be admired, though it may sometimes be endured; but a needless and harmful fiction should go the way of its numerous fellows which have fallen before the preference for truth. The contract of lease which the parties make, which they intended to make, and to which alone they bound themselves, may, perhaps, be resolved into a different contract involving new liabilities and to a party unknown to the original agreement, where some pressing need or some strong justice compels; but where there is no such compulsion, where the contract *can* stand as it was made, and so ought to stand as it was made, and neither necessity nor justice requires it to be thwarted or modified, I doubt the wisdom of summoning to that work an antiquated fiction which the authorities in this State have been slowly stripping of its possessions and preparing for burial. The cases of *Collins* v. *Hasbrouck* and *Ganson* v. *Tifft* (*supra*) denied its application where there was any reversion in the sub-lessor; where there was a right of re-entry reserved in the under-lease, and where its rental terms differed from those of the primary letting. Only where it was immaterial to the new tenant under which lease he paid the same rent and possessed the same rights, was the fiction of an assignment tolerated. But in the present decision it regains its old power and begins a new reign. The doctrine which I thought should be dethroned invites to its coronation. I must be permitted to decline. Agreeing with the courts below, that the instrument in question is a sub-lease and not an assignment, I must vote for an affirmance of the judgment.

All concur with Rapallo, J., except Finch, J., dissenting; and Ruger, Ch. J., and Miller, J., not voting.

Judgment reversed.