LUSK OPERATING COMPANY, INC., Landlord, Appellant, *v.* JACQUES GELARDIN, Undertenant, Respondent.

Supreme Court, Appellate Term, First Department, March 7, 1946.

*John J. Boyle* and *H. George Carroll* for appellant.

*Samuel Ross Ballin* for respondent.

MEMORANDUM *Per Curiam.* As between Horta and Gelardin, tenant and subtenant, there was, it appears, a formal technical

reservation of a reversion in the sublease sufficient to endow it with the character which the parties signified in entitling it " Sublease ". (*Stewart* v. *Long Island R. R. Co.*, 102 N. Y. 601; *Post* v. *Kearney*, 2 N. Y. 394.) The Lusk Operating Company, Inc., the owner-landlord, in whose main lease to Horta it was provided that " The tenant  *  *  *  will not assign this lease or underlet the leased premises, or any part thereof, without landlord's written agreement " was entitled to rely upon such reservation as establishing the relation between the parties. In addition clause 14 of the main lease, and the lease to Gelardin of another apartment in the same building, provided: " If this lease is assigned by the tenant, or the leased premises are underlet or occupied by anybody other than the tenant, the landlord may collect rent from the assignee, under-tenant or occupant, and apply the net amount collected to the rent herein reserved, and no such collection shall be deemed a waiver of the covenant herein against assignment and underletting, or the acceptance of such assignee, under-tenant or occupant as tenant, or a release of the tenant from further performance of the covenants herein contained."

Under the circumstances, the landlord's acceptance from Gelardin of rent due it from Horta pursuant to letters later exchanged between the parties did not change the sublease into an assignment (*Peck* v. *Ingersoll*, 7 N. Y. 528; *Sanford* v. *Ambassador Restaurant Co., Inc.*, 139 Misc. 3). The elements of estoppel not being established (3 Pomeroy on Equity Jurisprudence [5th ed.], §§ 804–805), the landlord was not estopped from showing the true relationship.

The final order should be reversed, with $30 costs, and final order directed for landlord as prayed for in petition, with costs.

EDER, J. (dissenting). The landlord appeals from a final order made in favor of the respondent dismissing the petition.

The petition alleged that the respondent was a subtenant of one Jose Horta, to whom the landlord had leased the premises in concern; on July 23, 1943, a lease was entered into between the landlord and Horta for apartment " E " on the tenth floor of premises 25 East 83d Street, Manhattan, for a term of two years commencing October 1, 1943, and ending September 30, 1945; on October 11, 1944, Horta entered into an agreement with the respondent leasing said apartment to him for the balance of the term of his lease with the landlord-appellant; it was made subject and subordinate to all the terms of the lease between the landlord and Horta.

The appellant in its brief states: "The only question in this case is — was Gelardin a sub-tenant holding over after his landlord's lease had expired?

"There is here a clear cut question of law. The court during the trial emphatically stated such to be the case."

I think this is a correct statement, for at the conclusion of the trial the landlord's counsel inquired: "Does your Honor want a memorandum on a particular point?

"The Court: Only one question: Whether or not this is a sublease or an assignment. Apply yourself to the question of assignment and sublease."

The matter whether there was a subletting or an assignment becomes important in the right of the landlord to maintain this proceeding; if the transfer of the demise constitutes a subletting, then the proceeding is maintainable under paragraph (4) of subdivision (a) of section 6 of the Office of Price Administration Rent Regulation for Housing in the New York City Defense-Rental Area (8 Federal Register 13918, as amd.); if it is an assignment, it is not.

The landlord argues that the mentioned agreement of October 11, 1944, is a sublease and not an assignment and that the respondent is a subtenant and as his term has expired, the landlord is entitled to possession of the premises.

The correspondence of the parties speaks of both lease and sublease and subletting and from the fact that the expressions "sublet" and "sublease" are used therein, the landlord argues it evidences that it was the intention of the parties that the agreement between Horta and respondent was intended to be a sublease and not an assignment; it is also argued that if Horta retained in himself some fragment or shred of his estate, either substantial or even formal and technical, then the agreement of October 11, 1944, between Horta and respondent is a sublease.

I do not regard this as a conclusively convincing argument. They are elements to be considered. I am, rather, of the opinion that the evidence clearly indicates that what the parties intended and understood was that Horta was transferring to respondent the *entire* balance of his term, for the correspondence, i.e., Exhibits 4, 5 and 6, all pointedly state that the transfer of the tenancy of Horta to respondent is for the remainder of the term expiring on September 30, 1945.

The evidence also establishes that the respondent, aside from being an assignee, and not a subtenant, became a tenant of the landlord-appellant, and he, for this reason, also, has the right to

continue in possession. The mere fact that the lease contains a provision that it may not be assigned without the landlord's written consent is not controlling where there is proof, as there is, that the landlord, with knowledge of the assignment, billed the respondent as a tenant for the rent (Exhibits I and K) and expressly so regarded him as the *tenant* (Exhibit J). On June 27, 1945, the landlord herein wrote respondent:

" Dear Mr. Gelardin: This is to notify you that your term *as a tenant* of apartment 10-E expires on September 30th, 1945, and that the premises have been rerented to a new tenant and that it will be necessary for you to vacate the apartment on or before September 30th, 1945."

I do not see how this evidence can be disregarded and given no weight whatever. It seems to me that this is about as clear proof of what was intended, understood and actually occurred, as one can imagine.

Where a tenant leases demised premises to another for the entire balance of his term, the transaction constitutes an assignment of lease and not a sublease. I think it is clearly against the weight of the evidence and contrary to law to hold that the transaction between the parties was intended as a sublease, viz., to convey to respondent a lesser term than Horta possessed under his major lease, but that it is affirmatively shown and established that the parties contemplated, intended and understood that Horta was to transfer, and did, the entire balance of his term under the major lease to the respondent. This thus resulted in making the transaction and transfer an assignment and not a sublease.

The tenuous " strands " or " fragments " to which the appellant clings do not impress me at all; the matter, I feel, should be viewed, weighed and determined in the light of reality, in order that substantial justice be done.

It is true that lawyers know the niceties and distinctions between sublease and assignment and their legal effect, but these parties were not concerned therewith; one, Horta, the tenant under the major lease, knew he had a definite term of a tenancy which expired on September 30, 1945, under which he was liable and he wanted to rid himself thereof for the *entire unexpired term* of his lease with the appellant, and that is precisely what the correspondence reveals; on the other hand, the respondent wanted to obtain the right to occupy and possess the apartment for the precise term and duration of Horta's unexpired term. That is what was basic with both of these parties and that clearly manifested intention should control.

An assignment by a lessee without the consent of the lessor, if required by the lease, is not absolutely void but voidable at the election of the lessor (*Chautauqua Assembly* v. *Alling,* 46 Hun 582; *Dierig* v. *Callahan,* 35 Misc. 30); and if the lessor, with knowledge of the assignment by his lessee, accepts rent from the assignee to whose presence upon the premises he has given no written consent, he will be conclusively held to have waived any objection he may have been entitled to make and is presumed to have accepted the assignee as his tenant (*Clark* v. *Greenfield,* 13 Misc. 124; *Garcewich* v. *Woods,* 36 Misc. 201).

Under the cases cited, and upon the evidence, under the local law such a relationship of landlord and tenant was created between the appellant and the respondent. Under the local law the respondent became the tenant of the landlord-appellant, so that, viewed from either perspective, the respondent's right to continued possession is shown.

While paragraph (4) of subdivision (a) of section 6 of the Office of Price Administration Rent Regulation provides that a proceeding to recover possession may be brought against a subtenant or other person who occupied under a rental agreement with the tenant, paragraph (1) of subdivision (c) of section 6 (8 Federal Register 13918) entitled "*Exceptions from section 6*" renders paragraph (4) of subdivision (a) of section 6 inapplicable where *under local law* there is a *tenancy* relationship between the landlord and the subtenant or other such occupant.

The attempt of the appellant to bring itself within the exceptions of paragraph (4) of subdivision (a) of section 6 of the Regulation by refined, albeit tortuous, distinctions, should not be permitted to override plain facts and truth.

The appellant does not come within the exceptions of paragraph (4) of subdivision (a) of section 6 in view of the nature of the agreement, the intent and conduct of the parties, and the legal effect of the transaction; and the dismissal of the petition, upon this record, was proper.

As the decision below is correct, on the basic feature, I deem it unnecessary to discuss the other claims made.

The final order should be affirmed, with $25 costs.

HAMMER and McLAUGHLIN, JJ., concur in memorandum *Per Curiam*; EDER, J., dissents in opinion.

**Order reversed, etc.**