JOSIAH HICKS, Appellant, v. ROBERT B. MARTIN ET AL., Respondents.

**Kansas City Court of Appeals, April 11, 1887.**

| | |
|---|---|
| 25a | 359 |
| 31a | 131 |
| 25 | 359 |
| 34 | 425 |
| 25 | 359 |
| 59 | 482 |
| 25 | 359 |
| 61 | 570 |
| 25 | 359 |
| 64 | 354 |
| 25 | 359 |
| 135m | 189 |
| 68 | 23 |
| 70 | 74 |
| 25 | 359 |
| 73 | 428 |
| 74 | 124 |
| 25 | 359 |
| o78 | 440 |
| 25 | 359 |
| 95 | 4181 |

1. ATTACHMENT—JUSTICE'S COURT—ISSUE ON PLEA IN ABATEMENT. When in an attachment proceeding before a justice of the peace, the issue on the *plea in abatement* is found for the plaintiff, as in this case, he is entitled to have judgment that the attachment be sustained, and for the recovery of his costs against the defendant in that behalf had, etc.; and if the defendant would have that adverse judgment reviewed, the burden of appealing therefrom should certainly rest upon him; and an appeal in the case taken by the *plaintiff*, on a judgment against him by the justice 'on*the merits*, does not bring up *for re-trial*, in the circuit court, the issues on the *plea in abatement*.

2. LANDLORD AND TENANT—LEASES—ASSIGNEES AND UNDER TENANTS AT COMMON LAW AND UNDER THE STATUTE.—At *common law* the *assignees* of a lease are liable *personally* on *all the covenants* of the assignor, but *under tenants* only for the money rental promised by the lessee. An *assignment* is where the lessee transfers the *whole interest* of his lease to another, without retaining any reversionary interest. An *under letting* is where the lessee *sub-lets* the premises, retaining a reversion in himself. But the rule of the common law has been changed by the statute in this state (Rev. Stat., sect. 3095), which places the under tenant on the same footing with the assignee.

4. JUSTICE'S COURT, JURISDICTION OF.—In a proceeding originating in a justice's court, as in this case, the justice has no jurisdiction over the question of an estoppel *in pais*. That is a defence peculiar to equity jurisprudence, which justices of the peace do not exercise.

APPEAL from Johnson Circuit Court, HON. NOAH M. GIVAN, Judge.

*Reversed and remanded.*

Statement of case by the court.

This action originated in a justice's court. It was a proceeding by attachment under the landlord and ten-

ant's act. The affidavit, among other things, alleged, as the grounds of the attachment, that there was due and owing the plaintiff, the sum of $87.50 as rent money on certain premises let by him to the defendant, Martin ; and it was sought to bind the other defendants, Tanner and Adams, for this rent, on the ground that they had taken a part of the same premises under Martin as tenants. On the trial before the justice, as on appeal in the circuit court, the defendant, Martin, made no defence. The whole controversy is as to the liability of the other defendants, the sub-tenants. The issues on the trial of the plea in abatement in the justice's court were found for the plaintiff. The defendants took no appeal from this judgment.

On the trial of the merits the issue was found for the defendants. Plaintiff appealed from this last judgment.

In the circuit court, over the objection of the plaintiff, the court ruled that the issue on the plea in abatement, as well as on the merits, was for trial *de novo;* and re-tried the issue under said plea in abatement. The court, sitting as a jury, found that issue against the plaintiff. Plaintiff excepted, moved for a new trial, and, on that being overruled, appealed therefrom. The court also found the issue for defendant on the merits. From this judgment, plaintiff also appealed.

The only difference between the two contracts of lease is, that the one from plaintiff to Martin was for forty-five acres of land, and it provided that so much of the land, a given quantity, as should be cultivated in corn, should be paid for in money, to-wit : the sum of one hundred and twenty-five dollars, on or before the first day of September of that year. The contract of lease from Martin to Tanner and Adams was for only thirty-five acres of the land, and the rental for the corn land was to be paid by a certain share of the crop, to be cribbed on the premises of plaintiff. Both leases contained a provision that " without further notice or form

or process of the law the party of the first part (the lessor) shall have full and complete possession at the end of the term."

SAMUEL P. SPARKS, for the appellant.

I.   The defendants having failed to appeal from the verdict and judgment in the justice's court sustaining the attachment, it was error in the circuit court to award a trial, *de novo*, on the plea in abatement; there is no provision of law authorizing it. 1 Rev. Stat., sect. 439. There had been no trial of the attachment, nor verdict and judgment of the justice unappealed from in the case of *Phillips v. Bliss* (32 Mo. 427). The provision of law regulating attachments in courts of record apply and govern in cases before justices of the peace. 1 Rev. Stat., sect. 481.

II.   The court erred in refusing the declaration of law asked by appellant, to the effect that a landlord can maintain an action by attachment against the tenants for rents when due and unpaid for; this point has been expressly ruled by this court. *Chamberlain v. Heard*, 22 Mo. App. 416; *Hubbard v. Moss*, 65 Mo. 647; *Crawford v. Coil*, 69 Mo. 588. It follows, therefore, that the finding and judgment of the circuit court, sustaining the plea in abatement and dismissing the attachment must be reversed, for the evidence that the rent was due and unpaid was uncontradicted.

III.   The court erred in admitting oral testimony, which tended to vary, explain, or contradict the terms of the contracts of leases read in evidence. *Johnson County v. Wood, Adm'r*, 84 Mo. 489.

IV.   The leases read in evidence were the only competent evidence of the several contracts between the parties, and the admission of the oral testimony to vary, contradict, or explain them was erroneous, since there was nothing ambiguous in their terms. *Johnson County v. Wood*, 84 Mo. 489; *Koehring v. Muemminghoff*, 61 Mo. 403; *Willi v. Dryden*, 52 Mo. 319.

V.   The defendants, Tanner and Adams, as under tenants, were liable as such to Hicks to pay him the rent reserved in his lease to Martin, and of the kind and at the times mentioned in the lease, notwithstanding a different kind of rent was reserved in the lease from the original tenant, Martin, to them as his sub-tenant. 1 Rev. Stat., 1879, sect. 3095, p. 519 ; *Smith v. Brinker*, 17 Mo. 148 ; *Willi v. Dryden*, 52 Mo. 318.   It follows that the refusal of the court to declare the law, as requested, embodying the foregoing propositions, was erroneous.

VI.   The uncontradicted evidence shows that Tanner and Adams entered into possession of the premises under the lease, used, cultivated, and occupied same, and by reason thereof they became liable alike with their lessor, Martin, for the rent he had covenanted to pay plaintiff, Hicks.   Rev. Stat. 1879, sect. 3035, *supra;* *McKee v. Angelrodt*, 16 Mo. 283.

VII.   The landlord, Hicks, was entitled to a lien on all the crops grown on the demised premises, whether raised by Martin or the under tenants, Tanner and Adams, and this lien would attach to the money, the proceeds of the sale of the crop in the hands of the court. 1 Rev. Stat., sect. 3083, p. 516 ; *Haseltine v. Ausherman*, 87 Mo. 410.

A. B. LOGAN, for the respondents.

I.   The appeal by *plaintiff* brought the *entire case* up to the circuit cou rt, there to be tried *de novo*, without regarding any errors, defect or other imperfection, in the summons, or on the trial judgment, or other proceedings, of the justice.   Rev. Stat., sect. 3052 ; *Phillips v. Bliss*, 32 Mo. 427 ; *Compton v. Parsons*, 76 Mo. 455 ; *Moore v. Hutchinson*, 69 Mo. 429.   Section 439, Revised Statutes, cited by appellant, was not intended to apply to *proceedings before justices.*   In order to comply with this section, defendant must file his bill of exceptions, as upon any other proceeding.

II.   The court having found that there was no rent

due from Tanner and Adams, there was no injustice done appellant by refusing the instruction *complained of*, for there was nothing to predicate it upon.

III. The oral testimony heard by the court did not tend to vary, explain or contradict the terms of any written lease read in evidence ; but appellant cannot complain in this court, for this point was not saved in his motion for a new trial. The record shows that the appellant plaintiff here, at the conclusion of the evidence on the plea in abatement, voluntarily appeared and went into trial of the cause upon its merits, and did not even file his motion for a new trial on the plea in abatement, until after the cause had been heard upon its merits. Having done this, he cannot maintain his appeal here, and it should be dismissed upon the plea in abatement. The oral testimony offered in the case was not for the purpose, nor did it tend to vary or contradict the terms of the lease. There was no written undertaking between plaintiff, Hicks, and defendants, Tanner and Adams.

IV. Section 3095, Revised Statutes, relied upon by appellant, does not sustain his position, nor do the cases of *Smith v. Brinker* (17 Mo. 148) and *Willi v. Dryden* (52 Mo. 319). It cannot be contended that this section either endangers, increases or diminishes the liability of a sub-tenant ; it only gives a remedy to the landlord against the sub-tenant, where he would not have one, but for this statute. There was no privity of contract between the landlord and sub-tenant, but this section removes that difficulty and provides, in effect, that the landlord may have the same remedy against the sub-tenant that he could have against the original tenant.

V. It is a familiar doctrine of the law "that, if a person having a right to an estate encourages a purchaser to purchase from another, the purchaser shall hold it against the person who has the right." *Huntsucker v. Clark*, 12 Mo. side p. 334. Applying this doctrine to this case, the finding of the court below on this

point was correct. And this is the only question in the
case. If this point be found in favor of appellant, then
the case should be remanded; but, if found in favor of
*respondents*, it should be affirmed; even if any other
error was committed, it could not prejudice the sub-
stantial rights of appellant.

VI. The only remaining point submitted by appel-
lant is, that he is entitled to a lien upon the money de-
rived from the sale of the property attached. Here there
was no attempt to remove the crops from the leased
premises. This lien cannot be enforced by attachment,
unless some of the grounds provided for by section 3091,
Revised Statutes, exist and are proved, and we contend
that plaintiff wholly failed to establish the existence of
any of them. *Again:* Plaintiff does not pray for a lien
in his petition, and he cannot now demand what he did
not ask for in his petition.

PHILIPS, P. J.—Two questions arise on this record:
first, as to the action of the circuit court in holding that
the issue on the plea in abatement was properly retri-
able on the appeal taken by plaintiff from the justice's
court; and, second, in holding that the defendants were
not liable on the merits.

I. Section 3092, Revised Statutes, provides, that:
"The proceedings on all attachments issued under this
chapter (concerning landlords and tenants) shall be the
same as provided by law in cases of suits by attach-
ment."

Section 481, concerning attachments in justices'
courts, declares, that: "The provisions of law govern-
ing attachments in courts of record shall apply to
attachments before justices of the peace, so far as the
same may not be inconsistent with the provisions which
are specially applicable to the latter."

Section 439, Revised Statutes, concerning proceed-
ings by attachment in the circuit court, provides, in sub-
stance: that on the trial of the issues under a plea in
abatement, if the same be found for the plaintiff, judg-

ment shall be rendered for the plaintiff against defend-
ant sustaining said attachment, and for the costs of the
attachment proceedings, and the defendant may file his
bill of exceptions, and go to trial on the merits, without
waiving his rights to have the action of the court, on the
plea in abatement, reviewed. It then provides, that if
the issue on the plea in abatement be found against the
plaintiff, and he appeals therefrom, the defendant may
not be required to answer to the merits until the matter
is at an end respecting the trial of the plea in abatement.
It then concludes with the following provision: "And
if the party, against whom judgment shall be rendered,
fails to appeal during the time fixed by law for appeals
in other cases, he shall be deemed to have waived all
right to have such judgment reviewed."

In an attachment there are two distinct issues. The
first arises on the plea in abatement, which puts in issue,
alone, the truth of the facts alleged in the affidavit as
the basis of attachment. On this issue the merits, ordi-
narily, are not involved. After this issue is disposed of,
that, as to the merits comes on for hearing. This may
be at a term subsequent to that at which the issues on
the plea in abatement are determined. There are neces-
sarily two judgments. If the issue on the plea in abate-
ment be found for the plaintiff, as in this case, in the
justice's court, he is entitled to have judgment that the
attachment be sustained, and for the recovery of his
costs against the defendant in that behalf had, etc. It
may be conceded that the defendant could not appeal
directly from this judgment before the final judgment
on the merits, as the statute seems to contemplate that
he may then take issue on the merits without waiving
his right of review on the judgment against him on the
plea in abatement; yet, if he would have that adverse
judgment reviewed, the burden of appealing therefrom
should certainly rest upon him, as we do not see how
the plaintiff can be held to have appealed from a judg-
ment in his favor, on the issues arising in the plea in

abatement. For he complains of, and appeals from, the judgment against him on the merits, and nothing else.

Be this as it may, the conclusion reached by us on the merits makes the result the same to the parties in this cause. For, if it should be conceded that the appeal taken by the plaintiff, also brought up for retrial the issues on the plea in abatement, as there was no real controversy as to the fact of the rental claimed by the plaintiff being justly owing to him, and past due, this fact gave him a right of attachment, and the trial court should have found the issue for the plaintiff. *Chamberlain v. Heard*, 22 Mo. App. 416.

II. The controlling question, arising on the merits, is, are the defendants assignees, or, under-tenants ? At common law, if they were assignees of Martin they are liable, personally, on all the covenants of their assignor. If only under-tenants, they would not, at common law, be personally liable for the money rental promised by Martin. Wood's L. & T., sects. 93, 330 ; Taylor L. & T. (7 Ed.) sects. 16–109.

An assignment is where the lessee transfers the whole interest of his lease to another, without retaining any reversionary interest.

An under-letting is where the lessee sub-lets the premises, retaining a reversion in himself. Authorities *supra; Woodhull et al. v. Rosenthal et al.*, 61 N. Y. 383. It is a sub-lease where, as in this case, the contract provides for a surrender at the end of the term, to the first lessee, and especially so where the letting by the first lessee is only of a part of the farm leased. *Woodhull et al. v. Rosenthal et al., supra; Fulton et al. v. Stewart*, 2 Ohio, 216.

It must, therefore, be held that at common law this was an under-letting, and not an assignment, and the defendant would not be liable, on a money demand, for the rent to plaintiff.

III. The remaining question, therefore, is, whether

or not this rule of the common law has been changed by the following section of the statute (Rev. Stat., sect. 3095): "Rent may be recovered from the lessee or person owing it, or his assignee or under-tenant, or the representative of either, by the same remedies given in the preceding sections ; but no assignee or under-tenant shall be liable for rent which became due before his interest began."

We are of opinion that the only reasonable construction to be placed upon this section is, that it was the design and purpose of the legislature to place the under-tenant on the same footing with the assignee. It is the rent due the first landlord that may be recovered from the under-tenant, and it is by the same remedies given by the statute against his immediate tenant. This construction seems to be inevitable from the concluding language of the section, "but no assignee or under-tenant shall be liable for rent which became due before his interest began." Why relieve him of liability for rent accruing prior to his entering as under-tenant, if it were not in the mind of the framer of the section that such person was thereby rendered personally liable for such rents as accrued after he entered into the possession. This conclusion is inevitable. The object and purpose of the legislature were to wipe out the common law distinction between an assignee and under-tenant, in this respect, and to give the landlord the same remedies against them, by enforcing a lien against the crops grown on the demised premises, or by attachment, where he might run one against his tenant.

IV. It being undisputed that the rent from Martin to plaintiff was past due and unpaid, the plaintiff was entitled to have and maintain his attachment, and to recover judgment on the merits, if not otherwise obstructed by some legal impediment. It is suggested by respondents' counsel that the plaintiff ought not to recover, because he was present when the lease from Martin to these defendants was executed, and the de-

fendants refused to have inserted a clause in their contract with Martin, similar to that between plaintiff and Martin, providing for a money rental for the corn crop, and that plaintiff, standing by, and, in effect, consenting thereto, is now estopped from insisting on the statutory liability of defendants. But the answer to this is, that this proceeding originated in a justice's court, and such courts have no jurisdiction over the question of an estoppel *in pais*. That is a defence peculiar to equity jurisprudence, which justices of the peace do not exercise. *Wills v. Stephens*, 24 Mo. App. 494.

It follows that the judgment of the circuit court must be reversed, and the cause remanded for further proceedings, in conformity with this opinion. It is so ordered. All concur.