paid by a benevolent volunteer, who renounced all right to reimbursement. No interpretation of the act is conceivable which would allow the plaintiff to subject the recovery to the payment of any item which was legally payable from a source other than the sum recovered.

It cannot be said that the plaintiff, because he paid the funeral bill, may deduct its amount from this recovery. His attitude must be the same as if another person had been executor of the general assets, and he was an administrator to maintain the action. As executor of the general estate, and plaintiff in the action, he was trustee of inconsistent and separable trusts. In his character as plaintiff he did not pay the item. It was as a stranger to the duty which he bore as plaintiff that he paid it, and he paid it from a fund other than the fund in his charge as plaintiff. More than that, it was his duty to pay it from the other fund.

The conclusion is that the statute only contemplates deduction of funeral expenses from the recovery when the beneficiaries of the recovery are under the obligation to pay them, and that therefore the obligation cannot exist where the expense has been paid from a fund which was charged with its payment. Even if there were in this statute an express and inevitable requirement that the funeral expenses were to be paid from the recovery, it could be modified or waived. If the testator, instead of creating a fund of $100 for the purpose of defraying his funeral expense, had provided a fund equal to that expense and had made that payable to his general estate, could it be doubted that by his act, and especially by the later act of his representatives and legatees in accepting the amount of the funeral benefit, there would be brought about a waiver of any statutory provision, however stringent, by which the general estate was exempted from the payment of the funeral expense?

So when, by his will, he devoted his whole personal estate to the payment of his funeral expense, and gave to his nephews a residue which could only be reached by subtracting the amount of such expense, does it not result that he has impressed a like waiver upon his estate and those who may participate therein? The credit for funeral expenses which the executor has suspended in his account must be made a credit to him in the settlement of his accounts with the beneficiaries of the general estate, and the amount now held by him should be paid to the widow.

Decreed accordingly.

---

(88 Misc. Rep. 442)

### In re FANONI et al.

(Surrogate's Court, Kings County. December, 1914.)

1. TRUSTS ☞274 — CAPITAL AND INCOME — DEPRECIATION OF SECURITIES — DISPOSITION OF INTEREST.

   In the absence of a clear direction in a will to the contrary, the rule is that, where investments are made by a trustee as authorized by the will, the principal must be kept from any loss by payment of premium on securities having only a definite term to run; but, if the bonds are re-

ceived from testator's estate, the whole interest should be treated as in-- come and paid over to the life beneficiary.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. §§ 389–392, 493; Dec. Dig. ☞274.]

2. TRUSTS ☞274—CAPITAL AND INCOME—"RECEIVED FROM THE ESTATE OF THE TESTATOR."

The intrinsic meaning of the words "received from the estate of the testator," as used in such rule, forbids their being interpreted to mean "received in kind from the testator's estate as a specific bequest in trust."

[Ed. Note.—For other cases, see Trusts, Cent. Dig. §§ 389–392, 493; Dec. Dig. ☞274.]

3. COURTS ☞92—OPINIONS—DICTUM.

Where a statement of the rule governing a case decided by the court of last resort is accompanied in the opinion by an equally express state- ment of an alternative rule, not essential to the decision, but closely re- lated to the subject discussed, and declared as a guide for future con- duct, the latter statement will be deemed controlling by trial courts in future litigation.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 335; Dec. Dig. ☞92.]

4. TRUSTS ☞273—SINKING FUND—DEPRECIATION OF SECURITIES—DISPOSI- TION OF INTEREST.

Testator bequeathed $300,000 to his executors in trust, to receive the income and apply same to the use of his daughter for life, and on her death invest the trust in authorized securities. To make up such fund, the executors were also authorized to set apart securities in which his estate was invested at the time of his death. *Held* that, in the absence of any suggestion in the will to the contrary, the beneficiary for life was entitled to all the interest payable on securities thus set aside, and that the trustees were not required to withhold portions of the interest to form a sinking fund sufficient to provide against the wearing away of the premium value of the securities as they approached maturity.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. § 386; Dec. Dig. ☞273.]

5. TRUSTS ☞275—TESTAMENTARY TRUST—SINKING FUND.

Where a fund bequeathed in trust is in the form of specified securi- ties, there can be no sinking fund, unless the will so provides.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. § 393; Dec. Dig. ☞275.]

Judicial settlement of the accounts of Emily S. Fanoni and others, as trustees under the will of Abhie A. Merrill, deceased, for Florence Harrison. Decreed according to opinion.

Wingate & Cullen, of New York City, for trustees.
Francis E. Laimbeer, of New York City, for Florence Harrison.

KETCHAM, S. The will under which the trustees account is in part as follows:

"Sixth. I give and bequeath to my executors hereinafter named, the sum of three hundred thousand dollars ($300,000) in trust, nevertheless, for the following uses and purposes:

"(a) To receive the income and profits thereof, and to pay and apply the same to the use of my daughter, Florence Harrison, in equal quarterly pay- ments, during the term of her natural life."

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Then follow dispositions of the principal fund upon the death of the daughter named.

"Seventh. I hereby authorize and empower my said executors and trustees hereinafter named, to invest the said trust in such securities as savings banks are now or may hereafter be allowed by law to invest their deposits in, and to change such investments from time to time in their discretion. In addition thereto, if in the joint judgment of my three executors, or such of them as may qualify, or the survivors thereof, it shall be wise and proper so to do, I authorize and empower them in order to make up the said fund of three hundred thousand dollars ($300,000) to be held in trust as aforesaid, to set apart out of the securities in which my said estate may be invested at the time of my death, a portion thereof which, shall in their judgment be worth at their then market value, said sum of three hundred thousand dollars ($300,000) or any part thereof and I authorize and empower them, in case they shall set such securities aside, to hold the same as legal investments of the portion of said trust fund at which they shall have valued the securities so set aside, during such time as in their joint judgment may be wise, and for the best interests of said trust fund.

"This is not a direction to said executors to set any part of said securities aside for this purpose, but is an authorization to them to so do, if they think it wise and proper, and to constitute any such securities so set aside as legal investments of said trust fund by my said executors and trustees."

It is stipulated that the trust fund contemplated by the provisions quoted was established by the trustees—

"and that pursuant to the authorization and power contained therein the trustees set apart securities owned by the decedent at the time of her death, which at their then market value, with an adjustment of cash amounting to approximately $100, aggregated $300,000, as the principal of said fund, and that among these securities were bonds having a fixed date of maturity, of the market value of $270,000, and of the par value of $251,000."

[1, 2] The question is presented: Is the life beneficiary entitled to all the interest payable according to the obligation contained in the bond, or are the trustees required to withhold portions of such interest as received in order to form a sinking fund sufficient to provide against the wearing away of the premium value of the bonds which will result as they approach maturity?

In Matter of Stevens, 187 N. Y. 471, 80 N. E. 358, 12 L. R. A. (N. S.) 814, 10 Ann. Cas. 511, the court, in its prevailing opinion, after a review of earlier cases, says:

"We, therefore, adhere to the rule declared in the Baker Case [New York Life Insurance & Trust Co., 165 N. Y. 484 (59 N. E. 257, 53 L. R. A. 544)], that in the absence of a clear direction in the will to the contrary, where investments are made by the trustee, the principal must be maintained intact from loss by payment of premium on securities having only a definite term to run, while if the bonds are received from the estate of the testator, then the rule in the McLouth Case [McLouth v. Hunt, 154 N. Y. 179 (48 N. E. 548, 39 L. R. A. 230)] prevails, and the whole interest should be treated as income."

This is followed by language which indicates a design, not only to set forth the basis upon which the pending controversy was determined, but, further, to set up an express standard for general acceptance by trustees. In this regard the opinion proceeds:

"These rules may not work perfect justice in all cases, and we fully appreciate that there may be inconsistencies between them; but it is far better that they should be uniformly adhered to, even at the expense of a particular case, than that the administration of estates should be subjected to constant litigation and disputes."

The value of this authority is that it makes easy a hitherto troublesome problem, if its opinion can be followed, not only as to the question therein actually determined but also as to its obiter instruction. It would enable trustees, unless otherwise constrained by the will, to mould their administration of wasting securities to fit the obvious fact either that the securities were purchased by them or were found among the testator's assets.

[3] Where in the court of last resort the rule governing the case decided is accompanied by an equally express statement of an alternative rule not essential to the decision, but closely related to the subject discussed, the latter statement, even though made aside from the point of adjudication, may well constrain the judgment of a trial court. A dictum doubtless becomes a dictate when it is explicitly declared to be the guide for future conduct.

In Matter of Guaranty Trust Co., 131 App. Div. 658, 116 N. Y. Supp. 147, the court, quoting the rule of the Stevens Case in both of its branches, says:

"This definite rule was made by the Court of Appeals upon an examination of all the cases, and by a divided court, with a strong dissent, showing that the matter had been advisedly passed upon as a guide to future trustees. As these bonds were bought by the trustee, we are bound by the decision cited."

Whether or not a vigorous dissent from the conclusion reached in a prevailing opinion can impart to an admonition which runs with that conclusion any more of vitality or sanction than a unanimous approval would bestow, the law of the state must be taken by this court from the Stevens Case, viz., that the life beneficiary is entitled to the whole interest payable upon bonds of the character here involved if such bonds were received (by the trustees) from the estate of the testator, unless a direction in the will to the contrary be found.

The will now under examination at least does not contain any suggestion that the beneficiary for life shall receive less than the whole interest. What, then, is the true sense of the words which the Court of Appeals makes the test, "received from the estate of the testator"?

It has not been possible for this court to divert them from their natural meaning. It is sought by the accountants to impose upon them the same effect as if, instead of them, the phrase had been used, "received in kind from the testator's estate as a specific bequest in trust." This is forbidden by the intrinsic meaning of the words. The proposed interpretation cannot be fitted to them. It is made impossible by the fact in the McLouth Case. That fact was the matrix which gave the rule its form and life. The rule itself cannot be read, except with the fact which provoked, and therefore characterized, it.

The opinion in the Stevens Case did not assume to reveal the rule. It stated it as a doctrine already taught and established in the earlier case. Hence, when we find that in the McLouth Case the bonds there in question were not bequeathed in trust specifically, but were received by the trustees under the direction of the surrogate to set them apart to the trust fund, it would offend reason to suppose that the declaration of that case, confirmed and defined in the subsequent opinion, was confined to conditions which were not found therein.

For the present purpose it is as if it had been said in both cases that, whenever the bonds were received as they were received in the McLouth Case, the interest was wholly payable to the particular beneficiary. As they were received in that case, so were they received in the case at bar, with an exception distinctly more favorable to the primary beneficiary. There the trust was of the residuary estate, to be divided into three parts and held for the immediate benefit of three persons. The trustees, who were also executors, received the bonds first in their executorial capacity, without any testamentary intimation as to their disposition. Then by the order of the surrogate having jurisdiction the trustees set aside and retained these bonds for the purpose of the trust. It is observable that in that case the bonds were in no manner separated from the general personalty by the will, but were all merged in the administrative fund by law designed for the payment of debts, legacies, and charges of administration.

[4] In the present case the trustees received the bonds pursuant to a power contained in the will, under which they were permissively directed to segregate the securities from the outset of the administration from every obligation or vicissitude to which the personal estate was subject. That it was their duty to make this segregation at once in a solvent estate, where no rights of creditors were concerned, is apparent from the fact that the trust was clearly of the sort upon which income was payable to the beneficiary from the time of death. The testatrix obviously contemplated that any of her bonds which were to be set apart to the trust fund in question were to be detached from the general estate at the earliest convenience of the administration. In every common sense, and clearly in the sense in which the bonds were received in the Case of McLouth, the trustees now accounting received the bonds in question from the estate.

If it were necessary to the finding, this court should add to its holding that the will in this case affirmatively, though by implication, ordained that the bonds which might be taken into the trust should be carried for the purpose of the trust at their market value at the time when they were so taken. If this be true, the testamentary thought was that the trust of $300,000 was to be made up by the use of either one or both of two methods of monetary notation. The unit of one was the dollar of federal currency. The unit of the other was the dollar of market value of the bonds at the moment when they were taken to make up part or all of the fund. This is established by a fair reading of the will.

By the use of these bonds the fund was to be made up; the bonds were to be set apart to the fund out of the securities in which the estate was invested at death; there was to be put into the trust fund such portion of the bonds as should in the judgment of the trustees be worth at their then market value the sum at which they were taken into the fund; they were to be held as an investment of the portion of the fund at which they should be valued; they were to be held at the value at which they were taken for such time as might be wise, and therefore were to be sold if expedient.

The provision as to the use of the bonds as part of the fund could only mean that the fund was to be of a fixed number of dollars, to

which cash invested should contribute as many dollars as there were in the cash so employed and bonds, if used, should contribute as many dollars to the fund as there were dollars in their market value. Thus the bonds found their way into the fund by force of the will as surely as if they had been specifically bequeathed in trust, and their assignment to the trust fund was, through the act of the donees of her power, made by the testatrix, and was coupled with a purpose that so far as their market value would serve they should be taken in the place of the first tentative gift of $300,000 of money.

[5] Where the fund is in the form of securities specifically bequeathed in trust, it is settled that there can be no sinking fund, unless it be provided for by the will. Robertson v. De Brulatour, 188 N. Y. 301, 315, 80 N. E. 938. If there be any reason for this holding it must, at least, include the theory that the testator has intended that the interests of all beneficiaries shall be measured by his will and be limited to such income for the life tenant and such principal for the remainderman as will naturally flow from the nature of the security which the testator has selected for their benefit.

Whatever differences, here immaterial, there may be between a specific gift of securities and a gift of a principal sum to be made up of securities left by the testator and by his direction used in solution of the fund bequeathed, there is no reason for the rejection of the sinking fund in the case of the specific gift in trust which is not equally applicable to the specific securities when by force of the testator's will they find their way into the trust fund. In each instance he betrays the purpose that the securities shall stand as the fund itself from the time when they are incorporated into it.

A further ground for the payment in full of the income upon securities received from the estate is suggested in New York Life Insurance Co. v. Baker, 38 App. Div. 417, 421, 56 N. Y. Supp. 618. There the opinion, distinguishing the case of McLouth v. Hunt, supra, says:

"The case differs in another respect also from the present one. The bonds were held by the testator at the time of her decease, and as in her hands the interest on the bonds would be considered as income, the same rule might be considered to apply when the bonds were held by her trustee."

From this suggestion it is apparent that when the testatrix expressly announced that some of the bonds upon which she was in the habit of collecting the interest and regarding it as income on the investment might be taken into the trust for the purpose of paying the income thereof, she meant that the income to be paid by the trustees was the same income to which she was accustomed. In Matter of Hunt, 121 App. Div. 96, 105 N. Y. Supp. 696, the gift in trust was of all the real and personal estate, primarily to pay to the decedent's children the "net income and proceeds" of the estate, with remainder over. The gift of the trustees was qualified by these words, "the present good investments to remain." Among the "present good investments" which remained were bonds of the sort now under consideration. It was insisted that the surrogate had erred in failing to charge the accounting trustee with the depreciation in value of the

bonds in question, and the action of the surrogate was sustained. The court said:

"These bonds were securities which came to the executors as part of their testator's estate. They were by the will instructed that 'the present good investments' were to remain. No question is made as to the merit of these investments, but as the time for their payment approached the premium gradually decreased. This decrease is the loss in value complained of. This question was properly disposed of by the surrogate"—citing cases discussed, supra.

In the case cited the court did not look for a specific gift in trust, but found ample ground for its decision in the naked fact that the securities were of the testator at death, and were held in trust by the permissive direction of the will. Of course, the decision was equivalent to saying that the trustee would have erred if he had detached any part of the current income for the purpose of supporting the bonds against any waste of value.

The objection which provoked this discussion is sustained.

Decreed accordingly.