BRUMMITT TIRE CO. v. SINCLAIR REFINING CO. et al.—75 S. W. (2d) 1022.

Eastern Section.    January 20, 1934.

Petition for Certiorari denied by Supreme Court, October 13, 1934.

272

Chase & Neel and Cox, Taylor & Epps, all of Johnson City, for plaintiff in error.

George M. Dunn, of Johnson City, for defendants in error.

PORTRUM, J. This suit was instituted before a justice of the peace upon a summons to C. J. Archer and Sinclair Refining Company to answer the complaint of Brummitt Tire Company in a plea of debt due for damages for breach of lease and contract, in the total sum of $450, represented by the loss of six months' rental for the latter part of 1932.

On April 30, 1927, the defendant procured from Mrs. Minnie C. Brummitt, the landowner, a lease on a certain corner lot in the town of Elizabethton, Tennessee, for the purpose of constructing thereon a filling station (at a cost of $3,000, with its equipment), at a monthly rental of $140, and for a term of five years with an option to the lessee to renew or extend the lease for an additional term of five years by giving the lessor sixty days' notice of the intention to exercise the option, but at an increased rental of $215 per month for the last five years.

On May 2, 1927, the lessee entered into a sublease with the complainant, the Brummitt Tire Company, subletting this property for the purpose of the operation of the filling station for a like term of five years, running concurrently with the lessee's term at a

monthly rental of $10 per month, with a like provision granting the sublessee an option to renew for another term of five years, upon giving the lessee sixty days' notice in writing, and at an increased rental of $20 per month. These two leases seem to have been executed on a printed form identical in terms, but to the sublease certain provisions are added, changing its tenor in some respects, which will be hereafter noted.

Sixty days prior to the expiration of the five-year term, the sublessee, the complainant, gave the defendant, the lessee, notice in writing of his election to extend and renew the terms for the additional five years. No acknowledgment was immediately made to this notice, and the plaintiff wrote a letter to his lessor, the defendant, calling attention to his former communication. In reply to this letter the defendant states that he did not renew his lease with the landowner by giving her sixty days' notice, and therefore under the terms of his lease it expired, and as a consequence, under the terms of the plaintiff's lease, which was dependent upon the continuation of the defendant's lease, it likewise expired. And for this reason the defendant disclaimed liability to the plaintiff. But instead of the defendant electing to keep his lease alive by giving the landowner notice, he entered into a new contract with the landowner, at a less monthly rental, for a term of three years, with an election, or option, to extend this lease for an additional term of two years at an increased monthly rental. And the defendant then entered into an agreement with the plaintiff's tenants, who were in possession of the property, to attorn to him (the defendant), thereby succeeding in ousting the plaintiff from the possession of the property, and cutting off the plaintiff's monthly rental.

The plaintiff has elected as his remedy a suit for damages for the breach of the contract. The defense advanced now is that there was no breach of the contract for the reason that the instrument executed by the defendant to the plaintiff, and which was thought to be a sublease, was in fact an assignment, passing to the plaintiff the defendant's right to exercise the option of renewal by giving notice directly from the plaintiff to the landowner of his intention to renew. And that the plaintiff's failure to give this notice to the landowner terminated his contract, and left the defendant free to enter into a new contract with the landowner. This was not such a change of position on the part of the defendant in reference to the defense as would estop him. Mecklenburg Real Estate Co. v. Kyoleum Co., 142 Tenn., 295, 218 S. W., 821, 14 A. L. R., 944.

If the instrument sued on is a sublease, and not an assignment, then the defense is unavailing; and to dispose of the issue we find it necessary to set out at some length one of these leases, and parts

of the other. There were other leases, but we can only refer to them, for the transcript containing the leases covers forty-one pages. We will omit certain of the immaterial portions of the copied lease:

"This indenture, made and entered into on this the 30th day of April, 1927, by and between Mrs. Minnie C. Brummitt of Elizabethton, Tennessee, party of the first part (hereinafter referred to as the lessor), and A. O. Searle, as agent for the Sinclair Refining Company, a corporation under the laws of the State of Maine, party of the second part (hereinafter referred to as the lessee), witnesseth:

"That the said lessor, for and in consideration of the rents, covenants, agreements and conditions hereinafter mentioned and recited on the part of the lessee to be paid, kept and performed, has rented, leased, and does by these presents rent, lease and demise unto the said lessee the following described premises, to be used for conducting an oil and gasoline filling station, and an automobile battery service station, in the City of Elizabethton, Carter County, Tennessee, more particularly described as follows: That certain lot or parcel of land, located . . . upon which there is forthwith to be constructed by the lessor an oil and gasoline filling station and battery service station, at a total cost not to exceed the sum of Three Thousand and No/100 Dollars ($3,000.00) inclusive of all items of expenditure.

"It is understood and agreed by and between the parties hereto that this lease shall be in full force and effect as of the day of its execution by the parties hereto, and that possession hereunder shall be given and rent shall begin upon the date the lessee shall begin to operate a gasoline filling station in said building, which date shall be as soon as the building is ready for occupancy and equipment is installed; and should said date fall before or after the first day of any month, the first rent shall fall due and be payable on the first day of the first month thereafter, on a pro-rata basis, and from that time on the rent shall be paid in the amounts and upon the terms as hereinafter set out, upon the first day of each month, in advance, during the life of this contract or its extension.

"It is understood and agreed by and between the parties hereto, and is a part of the consideration of this lease, that:

"1. The lessee herein covenants and agrees to pay for said demised premises the sum of $140.00 per month payable monthly, as aforesaid, for each and every month during a period of five (5) years, dating from the first day of the month succeeding the completion of said building, and the opening of business therein, as aforesaid.

"2. On condition that the lessee shall keep the terms and conditions of the demise, for the first period of five years, the lessor here-

by grants to the lessee the optional right to renew or extend this lease for an additional period of five years from the date of said expiration, upon the terms and conditions set forth in this lease, except in respect to the amount of rent to be paid, which shall be as follows:

"For the first year of said extended period the sum $215.00 per month, upon the first day of each month, in advance, and a like amount upon the first day of each and every month thereafter, until the expiration of said five year extension period.

"3. Should the lessee herein desire to exercise his option hereinbefore granted, written notice of his election to renew the terms of this lease, in accordance with the terms and conditions heretofore set out, shall be given to the lessors not less than sixty (60) days before the expiration of the first five year period and it is understood and agreed that failure of the lessee to give such notice, in manner and form aforesaid, shall be and constitute an election upon his part not to exercise said option, but to vacate said property promptly upon the expiration of the first five year period.

"4. It is further understood and agreed that failure to pay the rent stipulated herein, or any monthly instalment thereof, promptly upon the due date thereof, or within a period of fifteen (15) days after any such due date, shall operate ipso facto, at the option of the lessor to cancel and annul this lease agreement in its entirety, in which event the lessee hereby covenants to immediately surrender peaceful possession of the demised property, hereby waiving all formality of entry, demand and notice.

"5. At the expiration of this lease, by reason of lapse of time, or otherwise, the lessee agrees to vacate the premises and to submit to re-entry by the lessors, and to that end waives all formality incident to notice, demand, re-entry, etc., and agrees to thereupon leave said premises in good condition, reasonable wear and tear excepted. . . .

"8. The lessee shall have the right and privilege of erecting, placing, constructing, equipping, maintaining and operating, in connection with said station, any and all structures, improvements, appliances, containers, and conveyors of whatsoever kind, on, under and above the ground, as he may desire to use or may require in operating, transacting and carrying on and conducting his business of storing, distributing and marketing products of refined petroleum, and conducting an automobile battery service station, all of the above to be at the lessee's expense. . . .

"11. On the termination of this lease, by lapse of time, or otherwise, the lessee shall, at his option and at his own expense, promptly remove all gasoline tanks, pumps and containers used for the storage and distribution of petroleum products, and all battery

equipment placed or owned by him on the premises, on condition that after such removal he shall restore the surface of the ground, floors, etc., to their uniform level and even condition, free from all excavations and debris, replacing the same in the same condition which they would have been in when said building was completed, had said equipment not been installed therein, and as substantially as may be.

"12. The privilege is hereby granted the lessee to sublet the premises for the conduct of the same character of business, conditioned only upon the sub-lessee conforming to the terms and conditions hereof, except as to payment of rentals for which the lessor shall at all times look to the lessee, and his principal. In the event of subletting, this agreement shall be binding upon and inure to the benefit of the lessor, lessee, and sublessee, their heirs, administrators and executors.

"13. Said lessor covenants, that the rents being paid as stipulated, and the covenants, conditions and warranties herein being all and singularly kept and faithfully performed the lessee shall lawfully and peaceably have, hold and use the premises demised during the term or terms hereby granted, without hinderance or molestation from the lessor, and said lessor hereby warrants and defends to the said lessee, against the lawful claims of all persons whomsoever the premises and property hereby demised.

"14. This lease shall not be construed as making the lessor in anywise liable for any damage occasioned by the failure to keep said premises in repair, or for any damages done or occasioned by or from the plumbing, gas, water, steam or other pipes or sewerage, or electric appliances or lines, nor the bursting, leaking or running of any tanks, wash stands, battery stands or waste pipes or other appliances, whether said damage occurs to the lessee, his employees or third parties.

"In testimony whereof, witness the signatures of the parties hereto, in duplicate on this the day and year first above written."

The instrument sued upon is upon a form similar to the form used in the above lease, as hereinbefore stated, and where the numbered sections are the same they will not be again set out, but reference will be made to the fact that the section is included in the second instrument:

"This indenture, made and entered into on this the 2nd day of May, 1927, by and between A. O. Searle, Agent of the Sinclair Refining Company, of Johnson City, Tennessee, hereinafter called the lessor, and Brummitt Tire Company, a partnership composed of Walter B. and Lonnie H. Brummitt, of Elizabethton, Tennessee, hereinafter called the lessee, witnesseth:

"That the said lessor, for and in consideration of the covenants

and agreements hereinafter mentioned, has demised and does by these presents sublease unto the said sublessee the following described real estate, upon which is forthwith to be constructed an oil and gas filling station and automobile service station, in the City of Elizabethton, Carter County, Tennessee, more particularly described as follows: That this certain lot or parcel of land . . . and being the same property leased to the party of the first part by one Mrs. Minnie C. Brummitt, by indenture of lease bearing date the 30th day of April, 1927, to which reference is here made.

"It is understood and agreed by and between the parties hereto and is a part of the consideration hereof that:

"1. This agreement shall be in full force and effect as of the date of its execution by the parties hereto, and possession hereunder shall be given and rent shall begin upon the date that that lessor shall have installed and set up the gasoline pump tanks, lubricating tanks and appliances and equipment necessary and proper for the operation and conducting of a gasoline filling station and automobile service station.

"2. The lessee hereby covenants and agrees to pay as rent for said sub-leased premises and the equipment therein set up and installed by the lessor the sum of Fifteen and No/100 Dollars ($15.00) per month, payable on the first day of each month, in advance, during the life of this contract or any extension hereof.

"3. The term of this sub-lease shall be for a period of five (5) years, dating from the first day of the month succeeding the completion of said filling station now being constructed or about to be constructed by the said Mrs. Minnie C. Brummitt, or as soon thereafter as the gasoline pumps, appliances and equipment have been installed by the lessor.

"It is the intention of the parties hereto that the term of this lease shall be co-extensive with and cease and determine upon the same date as shall the original lease between the said Minnie C. Brummitt and the lessor herein, with which lease all of the parties hereto are familiar.

"4. On condition that the lessee shall keep the terms and conditions of the demise for the first period of five years, the lessor hereby grants to the lessee the optional right to renew or extend this lease for an additional period of five years from the date of said expiration, upon the terms and conditions set forth in this lease, except in respect to the amount of rent to be paid, which shall be as follows:

"For the first year of said extended period the sum of $20.00 per month, upon the first day of each month, in advance, and a like amount upon the first day of each and every month thereafter, until the expiration of said five year extension period.

"5. Should the lessee herein desire to exercise his option hereinbefore granted, written notice of his election to renew the terms of this lease, in accordance with the terms and conditions heretofore set out, shall be given the lessor not less than sixty (60) days before the expiration of the first five year period, and it is understood and agreed that failure of the lessee to give such notice, in manner and form aforesaid, shall be and constitute an election upon its part not to exercise said option, but to vacate said property promptly upon the expiration of the first five-year period."

Section 6 in this lease is identical with section 4 of the lease heretofore copied.

Section 7 of this lease is identical with section 5 of the copied lease.

"10. During the time the said lessee shall be permitted to operate said station, the lessee covenants and agrees that it will exercise due diligence, and its highest skill and business ability in operating same, that they will keep said buildings and grounds clean and attractive at all times, and during such time of lessee's operation the said lessee will not store therein or handle through or therefrom any petroleum products except those supplied by the lessor. In the event of the lessee violating any of the provisions hereof, the lessor shall have the option and privilege of immediately terminating the lessee's operation of said station by canceling this lease agreement.

"11. Said lessor covenants, that the rents being paid as stipulated, and the covenants, conditions and warranties herein being all and singular kept and faithfully performed, the lessee shall lawfully and peaceably have, hold and use the premises demised during the term or terms hereby granted, without hindrance or molestation from the lessor, and said lessor hereby warrants and defends to the said lessee, against the lawful claims and demands of all persons whomsoever, the premises and property hereby demised.

"12. This lease shall not be construed as making the lessor in anywise liable for any damage occasioned by the failure to keep said premises in repair, or for any damages done or occasioned by or from the plumbing, gas, water, steam or other pipes or sewerage, or electric appliances or lines, wash stands, battery stands, or waste pipes or other appliances, whether said damage occurs to the lessee, its employees or to third parties.

"In Testimony Whereof, witness the signatures of the parties hereto, in duplicate, this the day and year first above written."

■ With the material parts of these two leases before us, it is insisted the second instrument is in law an assignment and not a sublease, regardless of the intention of the parties. Under the com-

mon law where the lessee transferred his entire interest in the estate and its terms by an instrument designated as a sublease, then by operation of law it was an assignment and not a sublease. This construction was made to prevent the lessee from defeating the landlord in his common-law tenure. A historical review of these reasons is set forth in the case of Stewart v. Railroad, 102 N. Y., 601, 8 N. E., 200, 55 Am. Rep., 844, and the application of the rule to present-day conditions, in the state of New York, is stated.

The authorities are not in harmony upon the application of the rule; the cases dealing with this question are entirely too numerous to discuss in this opinion, but they are available and easily found by reference to the title Assignments, 5 C. J., p. 842, under the head of "Lease and Sublease," and the succeeding pages with footnotes, briefly reviewing the holdings.

█ The rule briefly stated is as follows: "It will be observed that, in stating the general rule as to what constitutes an assignment of a lease as distinguished from a sublease, the requirement is that the instrument must convey the whole term, leaving no interest or reversionary interest in the grantor." Davis v. Vidal, 105 Tex., 444, 151 S. W., 290, 292, 42 L. R. A. (N. S.), 1084.

█ "The rules relating to the effect of an assignment of a lease are so well settled that it is hardly necessary to do more than refer to them. Where a lessee assigns his whole estate, without reserving any reversion therein in himself, a privity of estate is, at once created between his assignee and the original lessor, and the latter has a right of action, directly against the assignee, on the covenant to pay rent, or any other covenant in the lease which runs with the land; but if the lessee sublets the premises, reserving or retaining any such reversion, however small, the privity of the estate is not established, and the original landlord has no right of action against the sublessee, there being neither privity of contract nor of estate between them. Where a lessee of land leases the same land to a third party, the question has often arisen whether the second lease is in legal effect an assignment of the original lease, or a mere sublease. The question has frequently, and probably most generally, arisen between the lessee and his transferee, and much confusion will be avoided by observing the distinction between those cases and cases where the question has been between the transferee and the original landlord. In the latter class of cases the rule is well settled that if the lessee parts with his whole term or interest as lessee, or makes a lease for a period exceeding his whole term, it will, as to the landlord, amount to an assignment of the lease; and the essence of the instrument as an assignment, so far as the original lessor is concerned, will not be destroyed by its re-

serving a new rent to the assignor, with a power of re-entry for non-payment, nor by its assuming, by the use of the word 'demise' or otherwise, the character of a sublease; and the assignee, so long as he continues to hold the estate, is liable directly to the original lessor on all covenants in the original lease which run with the land, including the covenant to pay rent. . . . But, as between the original lessee and his lessee or transferee, even though the original lessee demises his whole term, if the parties intend a lease, the relation of landlord and tenant, as to all but strict reversionary rights, will arise between them." Stewart v. Long Island Railway Co., 102 N. Y., 601, 8 N. E., 200, 201, 55 Am. Rep., 844. Of this case the Georgia Court says, "The distinction thus brought out is recognized by many authorities, although not always so clearly stated." Potts-Thompson Liquor Co. v. Potts, 135 Ga., 451, 69 S. E., 734, 737.

The indicated omission in the above case contains citations of numerous old cases reported in reprint.

The conflict in the authorities arises by the holding of some courts that a covenant of re-entry contained in the sublease is a reservation of such a reversionary interest as will defeat the assignment. See the notes referred to in Corpus Juris for a discussion of this distinction. The Massachusetts courts hold:

"If by the terms of the conveyance, be it in the form of a lease or an assignment, new conditions with a right of entry, or new causes of forfeiture are created, then the tenant holds by different tenure, and a new leasehold interest arises, which cannot be treated as an assignment or a continuation to him of the original term." Dunlap v. Bullard, 131 Mass., 161.

And further it is said in the Stewart v. Railway Case, supra: "Of course, that useful result has gone out of the doctrine, and it remains with us simply a rule of legal logic, much less deserving of the power to override and pervert the discovered intention of the parties. As a consequence, a plain tendency to enforce that intention, even upon very narrow and technical grounds, has been developed. . . . It is quite obvious that they mean this, at least: that the contract of the parties, construed according to their plain intention as expressed by it, shall prevail where, upon such construction, that contract is a possible one, and can be rendered effective in subordination to established legal rules; and that, where a sublease is manifestly intended, the court will search diligently, and even closely for some trace of a reversion to support it."

This is the policy in this state, for: "The cardinal rule to be followed in this state, in construing deeds and other written instruments, is to ascertain the intention of the parties." City of Nashville v. Lawrence, 153 Tenn., 606, 284 S. W., 882, 883, 47 A. L. R.,

1266. In view of the modern rule as adopted in this state, there is some doubt as to whether the court will recognize this ancient rule of construction when the rule is in conflict with the manifest intention of the parties.

It is not necessary for us in this case to make a selection between the two rules of construction, for the reason we think under the common-law rule of construction that the instrument is not an assignment. The term "assignment" purports the transfer of all the assignor's interests to the assignee, and, as is often said, the assignee stands in the shoes of the assignor. If the purported assignor retains an interest in the estate, then there is necessarily two tenures, independent of each other, and there is no assignment of the entire interest of the estate. It then follows that the instrument is a sublease. In this case the defendant, who was the agent of the Sinclair Refining Company for the sale and distribution of its gasoline, reserves the right that no other gasoline should be sold at this station; and he entered into a lease contract with the Refining Company leasing the company the right to install tanks, pumps, etc., and to store and dispense their gasoline from this station. This lease was executed in 1931, and seems to be the renewal of a former lease of like character. And the plaintiff recognized the provisions of this lease with the company by dispensing the oil, or retailing the oil to the public, and permitting the installation of tanks, etc., by the company. Under these facts we think the defendant severed his estate by granting a part to one person, and the remaining part to another. Under the rule of an assignment, as stated in the above-cited cases, the assignor sought to assign the entire interests in the estate. Fulton v. Stuart, 2 Ohio, 215, 15 Am. Dec., 542; Shannon v. Grindstaff, 11 Wash., 536, 40 P., 123; Hicks v. Martin, 25 Mo. App., 359.

And if we are to seek diligently and closely for a trace of a reversion, then we think we have found a reversion in the defendant, or a right of occupancy in the defendant after the expiration of the plaintiff's estate. The defendant reserves the right after the termination of his five or ten year period, as the case may be, to remove the tanks, fixtures, and appliances placed upon the leasehold by himself, or his subtenant, the Sinclair Refining Company, with the right to tear up floors, dig pits, and do such acts as may be necessary to remove these articles, and then replace the floors and refill the pits, and leave the premises in good condition. A reversion is an incorporeal hereditament, and this license to remain in possession until these acts could be performed, if not an extension of the terms, was likewise an incorporeal hereditament, and we think sufficient to defeat the common-law construction declaring the instrument an assignment.

We are of the opinion that the instrument sued on is a sublease, and that the sublessor has breached it. The fact that he did not exercise his option and extend the term, by giving the contract notice, cannot avail him anything, for the reason that he took a new contract and has not disabled himself from carrying out the contract with his sublessee, the plaintiff. He may have the right to disable himself under the terms of his contract, but he did not do so, and seeks to enjoy the fruits of his original contract, without the burden of his contract, by abandoning one instrument and securing another of like tenor.

''The defendants were not relieved from their covenant to extend the plaintiffs' term for four years because they obtained a new lease, instead of a technical renewal of their old one.'' Hausauer v. Dahlman, 18 App. Div., 475, 45 N. Y. S., 1088, 1091, affirmed in 163 N. Y., 567, 57 N. E., 1111.

This rule at this time is not controverted by the defendant.

The name of the defendant C. J. Archer does not appear in the leases copied above, but the name of A. O. Searle appears as the agent for the Sinclair Refining Company; but later he, as the agent of the Sinclair Refining Company, assigned this lease by a formal written assignment to the defendant Archer, and in this assignment both the landowner and the sublessee, the plaintiff Brummitt, joins. And after this assignment the defendant Archer entered into a formal lease with the Sinclair Refining Company above referred to. In this formal assignment he was named as ''C. J. Archer, Agent,'' but this principal was not disclosed. The defendant Sinclair Refining Company contends that it is not liable for the breach of this sublease of the plaintiff, because it is not a party to it, since its assignment by the consenting plaintiff to the defendant Archer. In this suit the plaintiff seeks to hold the defendant Archer as agent, and also the Sinclair Refining Company as principal. If the relationship of principal and agent existed between Archer and the company, then the principal was undisclosed in the instrument, and the plaintiff could not hold the agent and the principal jointly liable, for the agent was acting for the principal, unless his agency was coupled with interest. So, when an agent acts for an undisclosed principal, the plaintiff has an election to sue either the agent or the principal, but he cannot sue both. Martin v. Gardner, 8 Tenn. Civ. App. (8 Higgins), 266.

Archer testifies that he was agent of the company only in the sense that he was dispensing their products under a contract, and in reference to the leasehold estate he was acting for himself. This contention seems to be borne out by the written instruments, and there is no direct proof to refute it. This being true, then

Archer is responsible for the breach, and the Sinclair Refining Company is in no way responsible for it.

█ Where a breach of the contract is established: "The measure of damages in such a case ordinarily is the difference between the rent agreed to be paid and the actual rental value of the premises at the time of the breach. North Chicago Street Railway v. Le Grand Co., 95 Ill. App., 435; Walcott v. McNew (Tex. Civ. App.), 62 S. W., 815;" Drake v. Board of Education, 208 Mo. 540, 106 S. W., 650, 14 L. R. A. (N. S.), 829, 123 Am. St. Rep., 448 and note, 13 Ann. Cas., 1002.

█ The proof in this case establishes that the measure of damages is in excess of the amount sued for, namely $450, and it is plaintiff's theory that he can sue for his damages sustained in monthly periods, and that he is entitled to institute repeated actions during the term of the lease. When he elected to sue for a breach of his contract, the breach was entire, and he cannot split his cause of action by bringing repeated suits for damages. He is entitled to one recovery only. Holland v. Forcum-James Cooperage & Lumber Co., 154 Tenn., 174, 285 S. W., 569.

The judgment of the lower court will be reversed, and a judgment entered here in favor of the plaintiff and against C. J. Archer for the sum of $450, with interest from May 5, 1933, the date of the issuance of the warrant, and the costs of the cause.

## On Petition for Rehearing.

██ This case was decided at a former opinion day, favorable to the appellant, but in discussing the issues the court stated the breach of contract established gave rise to but one cause of action, and the damages sustained exceeded the amount sued for, and that the appellant was restricted in his remedy to the amount sued for. The court stated: "When he elected to sue for a breach of his contract, the breach was entire, and he cannot split his cause of action by bringing repeated suits for damages. He is entitled to one recovery only."

The breached contract was a lease running for a period of five years, with an option to the lessee to renew the lease for another term of five years; at the expiration of the first five-year period the lessor breached his contract by refusing to recognize the option and extend the lease for another term. The petitioner had sublet the lease at higher monthly rental, and he conceived his damages to be measured by the difference in his monthly rent and that paid him by his tenant, and that he had a right to institute suit periodically to recover the monthly damages.

The petitioner's right to institute other suits was not directly involved in this lawsuit, and he was filed a petition to rehear, ask-

ing the court to strike from its opinion this holding, assigning as a reason that the holding is obiter dictum.

The court's holding was not obiter dictum, for it was a considered holding, supported by cited authorities, and if it did not cover a point in issue, then it is judicial dictum. The holding was made as a direction to the lower court to prevent the unnecessary consumption of time and expense in trying this issue in another suit. It was apparent that the right to institute another suit, or suits, was contemplated. The court thought the practical thing to do was to decide the issue now and prevent the unnecessary litigation, since the party was granted his day in court and had the right, which he has exercised, of filing a petition to rehear for a further consideration, and also the right of review by the Supreme Court. And we find that the court's course is recognized by the authorities.

"Where in the court of last resort the rule governing the case decided is accompanied by an equally express statement of an alternative rule not essential to the decision, but closely related to the subject discussed, the latter statement, even though made aside from the point of adjudication, may well constrain the judgment of a trial court. A dictum doubtless becomes a dictate when it is explicitly declared to be the guide for future conduct." In ᴀre Fanoni, 88 Misc., 442, 152 N. Y. S., 218, 221; Id., 216 N. Y., 640, 110 N. E., 1040.

■ ". . . . In a fortiori, an expression which might otherwise be regarded as dictum becomes an authoritative statement when it is expressly declared by the Court to be announced as a guide for future conduct." Courts, 15 C. J., sec. 344, p. 953.

■ It is not necessary that a rule for guidance on a point of procedure be expressly declared to be such in order to be considered authoritative by an inferior court. Exporters of Manufacturers' Products v. Butterworth-Judson Corporation (D. C.), 265 F., 907. See, also, Sutherland v. Friedenbloom (Tex. Civ. App.), 200 S. W., 1099; Parker v. Bailey (Tex. Com. App.), 15 S. W. (2d), 1033; Taylor v. Taylor, 162 Tenn., 482, 40 S. W. (2d), 393.

■ We have again considered the merits of our holding in reference to the splitting of causes of action. We have examined the authorities cited and believe they sustain our position, and not the position taken by the petitioner. When the lessor refused to exercise the optional agreement, there was but one breach, which was entire. It was not possible for there to be separate breaches giving rise to separate causes of action, as in the case of failure to pay monthly rentals when due. Matheny v. Preston Hotel Co., 140 Tenn., 41, 203 S. W., 327. In this case it is announced that the rule is for the benefit of the debtor and he may waive the rights; but we think this rule has reference to the breaching of a contract

that is still in existence, and not where the contract is destroyed by the breach. In such case the court will recognize but one measure of damages; it must be established and sued for in one suit. Johnston v. Southern Railway Co., 155 Tenn., 639, 299 S. W., 785, 55 A. L. R., 932.

We think it to the interest of all parties that this issue be set at rest at this time, to save unnecessary expense in again adjudicating the issue and to save the expense and time of the courts. For this reason we overrule the motion to rehear.